## IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON

**FILED**

January 19, 1999

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE,    (    **FOR PUBLICATION**

    Appellee,    (    **Filed: January 19, 1999**

v.    (    Chester Criminal

    (    Hon. John Franklin Murchison,

VAUGHN MIXON,    (    Judge

    Appellant.    (    No. 02S01-9804-CC-00034

| For State-Appellee: | For Defendant-Appellant: |
|---|---|
| John Knox Walkup<br>Attorney General & Reporter | George Morton Googe,<br>District Public Defender<br>26th Judicial District |
| Michael E. Moore<br>Solicitor General | Jackson, Tennessee |
| Elizabeth T. Ryan<br>Assistant Attorney General<br>Nashville, Tennessee | |
| James G. Woodall<br>District Attorney General<br>Twenty-Sixth Judicial District<br>Jackson, Tennessee | |
| Don Allen<br>Assistant District Attorney General<br>Jackson, Tennessee | |

## O P I N I O N

REVERSED IN PART;
AND REMANDED.        DROWOTA,
J.

We granted this appeal to determine: (1) when a judgment becomes "final" and triggers the one-year coram nobis statute of limitations; and (2) whether a petition for writ of error coram nobis may be filed in the trial court during the pendency of an appeal as of right from a conviction.

We conclude that a judgment becomes final, and the one-year coram nobis statute of limitations begins to run, thirty days after entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion. As a result, in most instances, to be timely, a petition for writ of error coram nobis generally will be filed during the pendency of an appeal as of right.

Therefore, to promote judicial economy, when a convicted defendant files a petition for writ of error coram nobis in the trial court, he or she must simultaneously file a motion in the appellate court to stay the appeal as of right until conclusion of the coram nobis proceeding in the trial court. The motion to stay will generally be granted by the appellate court. If, as in this case, an appeal is taken from the trial court's denial of the petition for writ of error coram nobis, it will be consolidated with the appeal as of right. Because coram nobis is an extraordinary remedy to which resort should be had only if no other remedy is available, upon review, the appellate court must first address the issues raised in the defendant's appeal as of right. If none of those issues are meritorious, the appellate court must then address the issues raised in the defendant's coram

nobis appeal.

In this case, a majority of the Court of Criminal Appeals[1] failed to address the issues raised by the defendant in his appeal as of right. Having considered those issues to prevent needless litigation, we conclude that the trial court erred by allowing the State to impeach the defendant's testimony with a prior sexual battery conviction, and the error is not harmless. Accordingly, the judgment of the Court of Criminal Appeals, which remanded this case to the trial court for further findings on the coram nobis claim, is reversed. The defendant's convictions of attempted rape, attempted incest, and sexual battery are vacated and the case is remanded to the trial court for a new trial.[2] Because of the double jeopardy prohibition against multiple punishments for the same offense, the defendant, upon retrial, may not be convicted of both attempted rape and sexual battery.

# I.

## FACTUAL BACKGROUND

---

[1]The majority opinion was authored by Judge Smith, with Judge Jones (deceased) concurring. Judge Tipton dissented. In his dissent, Judge Tipton addressed only those issues raised by Mixon in his appeal as of right.

[2]The new trial is granted with respect to the defendant's convictions for attempted rape, attempted incest, and sexual battery. Mixon has not challenged in this Court his convictions of public intoxication and evading arrest, and those convictions remain intact.

Following a jury trial the defendant, Vaughn Mixon, was convicted of attempted rape, attempted incest, sexual battery, public intoxication, and evading arrest. The proof at trial consisted of the testimony of the victim, A.M.,[3] the defendant's thirteen-year-old daughter. The victim testified that on April 16, 1994, she drove her father to visit one of his friends. Her father was unable to drive because he had consumed approximately eighteen cans of beer and was intoxicated.

After Mixon visited awhile with his friend, he and A.M. began the drive back home. The incident at issue in this appeal allegedly occurred on the return trip when the defendant instructed the victim to drive down a dirt road and stop the truck. The victim drove approximately one-half mile down the road and stopped the truck. The victim said the defendant had previously asked her if she had ever seen him naked, and once the truck was stopped, the victim said the defendant reached over, turned the key back on so the radio would play, placed his hand on her inner thigh, and commented that he "wanted a piece of pussy." The victim said she thought her father intended to rape her so she opened the truck door and jumped from the truck. As she was leaving the truck, the defendant grabbed her clothing and said he was only joking. The victim did not believe the defendant was joking, so she left the truck and ran down the dirt road and onto the main highway.

---

[3]It is the policy of this Court to refrain from using the name of a minor who has been the victim of a sex crime.

The victim ran approximately one-half mile down the main highway before she encountered another car driven by Keith Middleton, a reserve deputy with the Chester County Sheriff's Office. Middleton was driving an unmarked car and was not in uniform at the time of this incident. Middleton testified that he saw the victim running "as fast as she could go" down the side of the highway. By the time Middleton turned his vehicle around and returned to offer assistance, the defendant was driving along beside the victim. When Middleton parked his car, the victim ran toward him crying and hysterically pleading for help. A.M. asked Middleton not to leave her alone with the defendant. Although Middleton repeatedly inquired as to the problem, neither the victim nor the defendant responded to his inquiries. The defendant told Middleton to mind his own business, and eventually, Middleton returned to his car. As he drove away, Middleton observed the defendant grab the victim by the arm and throw her into the truck. The victim testified that once the defendant had forced her back into the truck he warned her not to "narc on him."

When Middleton called the Sheriff's Department to report the incident and to give a description of the vehicle, he was dispatched to the Mixon home on Carroll Road to investigate a possible rape. When Middleton arrived, two other deputies were already at the scene. The victim was also at the residence and told the deputies that the defendant had attempted to rape her. When the defendant heard these charges, he fled. Middleton and another deputy located him in a drainage ditch about 200 yards from his home. He ran again, but was

apprehended at a nearby outbuilding. When apprehended, the defendant's speech was slurred and he smelled of alcohol. The defendant violently kicked the doors and windows of the patrol car and was eventually sprayed with mace.

Mixon testified in his own behalf and denied both that he had touched his daughter and that he had made sexually explicit comments to her. Mixon admitted that he was intoxicated on the day of the incident. He also admitted that he had asked the victim to stop the truck on the dirt road on the trip home, but said he had done so only because he needed to again relieve himself. When questioned about the victim's hysterical behavior, Mixon said they had been arguing about an incident which occurred in Mississippi and about the victim dating an eighteen-year-old man. Mixon said A.M. made the allegations against him because he had intended to remove her from public school and enroll her in a private Christian academy to stop the relationship.

Mixon admitted that he had fled from the deputies when the victim told them that he had attempted to rape her, but said he had done so only because he had not wanted to be arrested for a crime he had not committed. The defendant explained that he previously had been arrested when the victim had falsely accused him of physically abusing her. Mixon said he had been injured when he fled, and attributed his violent behavior in the patrol car to the pain from his injuries and to being intoxicated. In response to a question by the State on cross-examination, the defendant acknowledged that he had been previously convicted

of sexual battery in Mississippi in 1986. The defendant admitted being guilty of public intoxication and evading arrest. However, the defendant strongly maintained that he was not guilty of the sexual assault crimes with which he had been charged.

Based upon this proof, the jury, on November 16, 1994, found the defendant guilty of attempted rape, attempted incest, sexual battery, public intoxication, and evading arrest. On March 20, 1995, the trial court imposed sentences for each of the convictions and denied the defendant's previously filed motion for a new trial. On April 18, 1995, the defendant filed a notice of appeal. The case was scheduled to be heard by the Court of Criminal Appeals on January 3, 1996, in Jackson.

However, on December 22, 1995, the defendant filed in the trial court a petition for writ of error coram nobis. The petition was accompanied by a sworn affidavit from the victim in which she recanted her trial testimony, and stated as follows:

> 1. My name is [A.M.]. I am fifteen (15) years old, and I know the difference between telling the truth and telling a lie.
> 2. I am the alleged victim of Vaughn Mixon, my father, whose trial was held on November 16, 1994 and is on appeal.
> 3. No one has promised me anything or threatened me in anyway to make this oath.
> 4. I testified at trial that my father said he "wanted a piece of pussy." He did say that, but he was talking about his girlfriend, not me. I knew that when he said it.
> 5. The only time he touched my leg that day was when he was trying to reach for the keys from the ignition. I did not think he was trying to feel my legs in a sexual way.

6. When I was running away from the truck, it was because we had been arguing about my boyfriend at the time. He was older and Daddy didn't want me going out with him. Daddy had put me in a private school to keep me away from the high school boys. I was angry and showing out by acting like I was walking home. I was not scared of him. I did not think he was trying to rape me.
7. When we got started back home and he said "don't narc on me," he was asking me not to tell mama about his girlfriend.
8. I made up the part about his trying to rape me because Mama had asked me to.
9. Mama & Daddy were getting a divorce and she didn't want him to have the trailer and land in Mississippi. She wanted him out of the way.
10. I knew Mama would let me do what I wanted to do, so I helped her out. Daddy was too strict about boys and what I did, so I didn't want to live with him anymore.

On the same day Mixon filed the petition for writ of error coram nobis in the trial court, he also requested, and was granted, a continuance of the oral argument in the Court of Criminal Appeals until March of 1996. In February, Mixon requested a second continuance until May of 1996, which the Court of Criminal Appeals again granted after observing that the petition for writ of error coram nobis "might be determinative of this appeal."

On March 27, 1996, the trial court held a hearing on the coram nobis petition at which the victim testified consistently with her affidavit. At the conclusion of the hearing, the trial court denied the petition on the basis that recanted testimony does not constitute newly discovered evidence which can support issuance of a writ of error coram nobis. The trial court noted, however, that if the victim had not testified at the initial trial "it would have affected the outcome of the trial" and "probably would have resulted in a dismissal" of the prosecution.

In April of 1996, Mixon filed a notice of appeal from the trial court's denial of the petition for writ of error coram nobis. Mixon also filed a motion requesting that the Court of Criminal Appeals consolidate his appeal as of right with the coram nobis appeal. The Court of Criminal Appeals granted the motion to stay oral argument and consolidated the coram nobis appeal with Mixon's pending appeal as of right from his conviction.

Upon consideration of the consolidated appeal, a majority of the Court of Criminal Appeals addressed only the issues related to Mixon's appeal from the denial of the petition for writ of error coram nobis. Although stating that the petition had not been timely filed within one year of the judgment becoming final, the majority concluded that the issue had been waived because the State had failed to plead the statute of limitations as a bar. With respect to the merits of the petition, the majority concluded that the trial court had erred in holding that recanted testimony will never support issuance of the writ of error coram nobis. The majority opined that

> [t]he test for granting a new trial in cases involving recanted testimony is as follows: (1) the trial judge is reasonably well satisfied that the testimony given by a material witness was false and that the new testimony is true; 2) the defendant was reasonably diligent in discovering the new evidence or surprised by false testimony, or unable to know of the falsity until after the trial; and 3) the jury might have reached a different conclusion had the truth been told.

Since the trial court had concluded, as a matter of law, that recanted testimony does not constitute newly discovered evidence which will support issuance of the petition for writ of error coram nobis, the trial court had not applied the test.

Accordingly, the majority reversed and remanded the case to the trial court for application of the three-pronged test. The majority did not consider the issues raised by Mixon in his appeal as of right.

One judge dissented from the remand. The dissenting judge stated that the one-year coram nobis statute of limitations does not begin to run until the conclusion of appellate proceedings and a petition filed during the pendency of an appeal as of right must be dismissed as premature. Accordingly, the dissenting judge opined that the majority had no jurisdiction to address the issues raised in the coram nobis appeal and should have only addressed the issues raised in Mixon's appeal as of right. Considering those issues on the merits, the dissenting judge would have reversed the defendant's convictions for attempted rape, attempted incest, and sexual battery and remanded for a new trial because of a double jeopardy violation and because the trial court erred by allowing the State to impeach the defendant's testimony with his prior conviction for sexual battery.

We granted Mixon's application for permission to appeal, and for the reasons that follow, now reverse the defendant's convictions for attempted rape, attempted incest, and sexual battery and remand for a new trial.[4]

---

[4]Mixon has not challenged his convictions for public intoxication and evading arrest; therefore, those convictions are in no way affected by our decision in this appeal.

## II.

## WRIT OF ERROR CORAM NOBIS

### A. Historical Origin

The writ of error coram nobis is an extraordinary remedy known more for its denial than its approval. Penn v. State, 670 S.W.2d 426, 428 (Ark. 1984). The writ was developed by the judiciary in England during the Sixteenth century. 18 Am. Jur. 2d Coram Nobis and Allied Statutory Remedies § 1 (1985). Since neither the right to move for a new trial nor the right to appeal were recognized at common law, the writ of error coram nobis was developed as a procedural mechanism to allow courts to provide relief under limited circumstances.[5] Morgan Prickett, Writ of Error Coram Nobis in California, 30 Santa Clara L. Rev. 1, 3 (1990). Essentially, the common law writ of error coram nobis allowed a trial court to reopen and correct its judgment upon discovery of a substantial factual error not appearing in the record which, if known at the time of judgment, would have prevented the judgment from being pronounced. John S. Gillig, Kentucky Post-Conviction Remedies and the Judicial Development of Kentucky Rule of Criminal Procedure 11.42, 83 Ky. L.J. 265, 320 (1994-95). Literally, "coram nobis" means "our court," or "before us." Black's Law Dictionary 304 (5th ed. 1979). Therefore, the writ of error coram nobis was addressed to the very court which had rendered the judgment rather than to an appellate or other reviewing court. Id.

---

[5]Errors of law were reviewed by higher courts through the common law writ of error which was substantially analogous to the modern appeal. Prickett, 30 Santa Clara L. Rev. at 3; People v. Reid, 232 P. 457, 460 (Cal. 1924).

The writ was thus distinctive in that it required the reconsideration of a judgment by a court which had already made a final disposition of the cause; but it cast no aspersions on the competency or finding of the court in its first judgment, for it lay only to call up facts which were unknown to the court at the time of judgment and which were not inconsistent with the record.

Note, The Writ of Error Coram Nobis, 37 Harv. L. Rev. 744 (1924). As such, the common law writ of error coram nobis did not encompass complaints about errors or mistakes in the judgment, but instead alleged that because of something that never came before the court, "it was a mistake to proceed to judgment at all." Prickett, 30 Santa Clara L. Rev. at 6 n.13. Though more frequently employed in civil cases, coram nobis relief was available in criminal proceedings under English common law.[6] Prickett, 30 Santa Clara L. Rev. at 6-9. Generally at common law the only time limitation upon the filing of the writ of error coram nobis was the requirement that a petitioner show that he or she had exercised due diligence in advancing the claim and seeking the remedy. 18 Am.Jur.2d Coram Nobis and Allied Statutory Remedies § 31 (1985); see also United States v. Morgan, 346 U.S. 502, 507, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954); Penn, 670 S.W.2d at 574.

The common law writ of error coram nobis was brought over from England to the thirteen colonies and later incorporated into the jurisprudence of the United States. Prickett, 30 Santa Clara L. Rev. at 7. The writ was not often utilized in criminal cases and, with the advent of the right to seek a new trial and the right to

_____

[6]Coram nobis was abolished by statute in Great Britain in civil cases in 1852 and in criminal cases in 1907. Prickett, 30 Santa Clara L. Rev. 2 n.20.

appeal, use of the writ in both civil and criminal cases declined well into the Twentieth century. Gillig, 83 Ky. L.J. at 321; 18 Am. Jur. 2d Coram Nobis and Allied Statutory Remedies § 1 (1985).

There was a revival of the use of the writ in criminal proceedings following a 1935 United States Supreme Court decision[7] in which the Court pointed out that states should have post-conviction procedures broad enough to encompass deprivations of federal constitutional rights. Gillig, 83 Ky. L.J. at 321; 18 Am. Jur. 2d Coram Nobis and Allied Statutory Remedies § 1 (1985). Through the 1940's and 50's many states utilized the writ of error coram nobis as a post-conviction remedy, but when states thereafter adopted more modern and comprehensive post-conviction remedies, the writ of error coram nobis again sank into obscurity and largely remains there today. Prickett, 30 Santa Clara L. Rev. at 2.

While the writ of error coram nobis was recognized and utilized under the common law in Tennessee, the General Assembly in 1858 enacted a statute which codified the procedure for seeking the writ of error coram nobis, expanded the grounds upon which a claim for relief under the writ could be based, and placed a time limitation upon its filings which provided that "[t]he writ of error coram nobis may be had within one year from the rendition of the judgment. . . ." Code 1858, § 3111; Jones v. Pearce, 59 Tenn. 281, 286 (1868). Both at common law and under the 1858 statutory enactment, however, the writ of error coram

_____

[7]Mooney v. Holohan, 294 U.S. 103, 79 L.Ed 791, 55 S.Ct. 340 (1935).

nobis was limited in scope to civil proceedings.  <u>Green v. State</u>, 216 S.W.2d 305 (Tenn. 1948).

In 1955 the General Assembly extended the writ of error coram nobis to criminal proceedings.  1955 Tenn. Pub. Acts 166.  The relief available extended only to "errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding."  <u>Id</u>.  With respect to procedure, the statute provided only that criminal coram nobis proceedings were "to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except in so far as inconsistent herewith."  <u>Id</u>.

Though the writ of error coram nobis in civil cases was superseded[8] when Rule 60 of the Tennessee Rules of Civil Procedure became effective in 1971,[9] the adoption of Rule 60 did not diminish or supersede the statute which extended the writ as an available remedy in criminal proceedings.  Indeed, Tenn. Code Ann. § 40-26-105 (1997 Repl.) currently provides as follows:

> There is hereby made available to convicted defendants in criminal cases a proceeding in the nature of a writ of error coram nobis, <u>to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as inconsistent</u>

---

[8]<u>See</u> Tenn. R. Civ. P. 60.02 Advisory Commission Comments ("This Rule supersedes chapter 7 of Title 27, T.C.A., dealing with the writ of error coram nobis . . . .").

[9]<u>See</u> Tenn. R. Civ. P. 1 Advisory Commission Comments (The Rules of Civil Procedure became effective January 1, 1971).

herewith.  Notice of the suing out of the writ shall be served on the district attorney general.  No judge shall have authority to order the writ to operate as a supersedeas.  The court shall have authority to order the person having custody of the petitioner to produce the petitioner in court for the hearing on the proceeding.  The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on the motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding.  Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.  The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.  In the event a new trial is granted, the court may, in its discretion, admit the petitioner to bail; provided that the offense is bailable.  If not admitted to bail, the petitioner shall be confined in the county jail to await trial.  The petitioner or the state may pray an appeal in the nature of a writ of error to the supreme court from the final judgment in this proceeding.

(Emphasis added.)

The anomalous result is that the writ of error coram nobis continues to be an available remedy in criminal actions, but the procedure governing the remedy is based upon the civil writ of error coram nobis which has been abolished for almost 28 years.  In this appeal, therefore, we must clarify several procedural issues which have arisen relating to the operation of the writ of error coram nobis in criminal proceedings.

## B. Statute of Limitations

Initially, we must determine when the one-year coram nobis statute of

limitations begins to run. The statute currently provides that "[t]he writ of error coram nobis may be had within one (1) year after the judgment becomes final. . . ." Tenn. Code Ann. § 27-7-103 (1980 Repl.). Relying upon a footnote in Teague v. State, 772 S.W.2d 915, 920 n.2 (Tenn. Crim. App. 1988), the State asserts that a judgment does not become final for purposes of this statute until the conclusion of the appeal as of right proceedings. In addition, the State contends that a petition for writ of error coram nobis which is filed before the conclusion of appellate proceedings must be dismissed as premature. Since the petition in this case was filed during the pendency of Mixon's appeal, the State argues that it should be dismissed, without prejudice, as premature.

Mixon agrees with the State that the coram nobis statute of limitations does not expire until one year after the conclusion of appellate proceedings. However, Mixon argues that a petition for writ of error coram nobis may be filed at any point after a final judgment is entered in the trial court until one year after conclusion of appellate proceedings. Thus, Mixon argues that a petition may be filed in the trial court during the pendency of an appeal.

We begin our analysis of this issue of statutory construction with a brief historical review. As originally enacted in 1858, the one-year coram nobis statute of limitations provided that "[t]he writ of error coram nobis may be had within one year from the rendition of the judgment, by petition presented to the judge at chambers or in open court. . . ." Code 1858, § 3111. In 1940, fifteen years before the General Assembly extended the writ of error coram nobis and its attendant

procedures to criminal proceedings, this Court in Cates v. City of McKenzie, 176 Tenn. 313, 141 S.W.2d 471 (1940), held the "'rendition' [of the judgment] is the time of announcement, 'in a conclusive manner and with decisive effect,' of a judgment, as distinguished from entry thereof, which may be a later date." Id. In other words, in Cates this Court held that the one-year coram nobis statute of limitations begins to run from the time a judgment is announced in the trial court in a conclusive manner, rather than from the time a judgment is formally filed or entered. In Cates, the trial court ordered the sale of land in February of 1937, but did not enter the final decree confirming the report of the sale until August of 1938. Under those circumstances, this Court held that the statute of limitations began to run in February of 1937, and the petition, filed more than one year later in December of 1938, was time-barred.

In Johnson v. Russell, 404 S.W.2d 471 (Tenn. 1966), a criminal case involving the writ of error coram nobis, this Court again held that the petition was time-barred because it had been filed more than one year after the judgment had been rendered in the trial court. The Johnson court held that the trial court could take judicial notice of the date that the judgments were rendered since the petition was before the "same trial judge who tried the man on the original three convictions." 404 S.W.2d at 473.

In an apparent response to the decision in Johnson, the General Assembly in 1967 amended the coram nobis statute of limitation by deleting the words, "from rendition of judgment," and by substituting instead, "after the judgment becomes

final." The 1967 revision is the only amendment to the coram nobis statute of limitations since its enactment in 1858. The sponsor of the proposed legislation told the full Senate that the amendment would extend the time for filing a writ of error coram nobis "by thirty days." 85th General Assembly, Remarks of Senator Thomas A. Harris, Senate Floor Session, March 23, 1967, Tape # S-212. Similarly, the House sponsor explained that under the proposed amendment a person would be able to file a petition for writ of error coram nobis for up to one year after his or her "appeal has been perfected." 85th General Assembly, Remarks of Representative Charles D. Galbreath, House Floor Session, May 16, 1967, Tape # H-336.

It is well-established that the fundamental role of this Court in construing statutes is to ascertain and give effect to legislative intent. State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993). Moreover, the Legislature is presumed to know the state of the law at the time it passes legislation. Wilson v. Johnson County, 879 S.W.2d 807, 810 (Tenn. 1994). Applying these general rules of statutory construction and considering the historical context, we conclude from the language of the amendment and the comments of the sponsors that the 1967 amendment was intended to overrule this Court's prior decisions in Cates and Johnson to the extent those decisions had held that the statute of limitations begins to run from the time a judgment is pronounced rather than from the time a judgment is formally entered. In our view, by adoption of the amendment, the General Assembly intended to change the trigger of the statute of limitations from pronouncement of judgment in the trial court to final judgment in the trial court. A

judgment becomes final in the trial court thirty days after its entry if no post-trial motions are filed. If a post-trial motion is timely filed, the judgment becomes final upon entry of an order disposing of the post-trial motion. See Tenn. R. App. P. 4(c); State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996). Accordingly, we hold that a petition for writ of error coram nobis must be dismissed as untimely unless it is filed within one year of the date on which the judgment of conviction became final in the trial court.

In so holding, we reject the contention of both Mixon and the State that the statute does not begin to run until the conclusion of the appeal as of right proceedings. The statute on its face does not lend itself to the suggested interpretation. Had the General Assembly intended for the statute of limitations to begin only after the conclusion of appellate proceedings, it certainly could have employed clear language to accomplish that intent. In fact, the General Assembly has used such clear language in the post-conviction relief context where a petition must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken . . . . " Tenn. Code Ann. § 40-30-202(a) (1997 Repl.) (emphasis added).

In addition, the assertion that the statute does not begin until appellate proceedings are concluded is also inconsistent with the longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim. 18 Am. Jur. 2d, Coram Nobis and Allied Statutory Remedies § 31 (1985). The assertion also overlooks the fact that with the passage of time, evidence

grows stale, witnesses disperse, and memories erode. See Herrera v. Collins, 506 U.S. 390, 403-04, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1992). A claim of newly discovered evidence which is not asserted until appellate proceedings are concluded, likely years after a person has been tried and convicted, is inherently suspect. Id. at 417-18, 113 S.Ct. at 869. Also, as a practical matter, were we to apply such an interpretation, oftentimes the original trial judge would not be available to make the statutory determination of whether the newly discovered evidence "may have resulted in a different judgment had it been presented at the trial." Tenn. Code Ann. § 40-26-105 (1997 Repl.). We acknowledge that it is neither practically possible nor legally required that the original trial judge make this determination in every case. However, having the original trial judge make the determination as soon as possible after a judgment has become final in the trial court is certainly preferable. See Penn, 670 S.W.2d at 429 (stating that because petition filed while case was between trial and appeal can easily provide for an early hearing before the court that just heard the case); cf. State v. Moats, 906 S.W.2d 431, 435 (Tenn. 1995) (discussing comparable problems associated with a trial judge making a thirteenth juror determination upon remand from an appellate court long after the trial was concluded).

In addition, finality concerns militate against applying the interpretation advanced by Mixon and the State. "[T]he administration of justice and the integrity of our court system demand, in addition to fair treatment under the law, a certain degree of finality to criminal judgments." Harrison v. State, 394 S.W.2d 713, 717-18 (Tenn. 1964). Since a convicted defendant had no other avenue for seeking

relief at common law, it was entirely appropriate for due diligence to be the only time limitation on the writ; however, criminal procedure has drastically changed in the past thirty years. See City of White House v. Whitley, __ S.W.2d __, __ (Tenn. 1998). Convicted defendants now have the right to move for a new trial, the right to appeal, the right to seek post-conviction relief, and the right to file habeas corpus petitions.[10] The post-conviction statute now provides a method by which courts may address claims of actual innocence which are based upon newly discovered scientific evidence.[11] Finally, convicted defendants who discover new non-scientific evidence of actual innocence too late to file a motion for new trial or petition for writ of error coram nobis may always seek executive clemency.[12] Clearly, in this modern procedural regime, the writ of error coram nobis is no longer a convicted defendant's only hope for relief. See Penn, 670 S.W.2d at 573-74 (describing the writ as filling a gap in the legal system); Ex Parte Welles, 53 So.2d 708, 711 (Fla. 1951) (stating that the writ supplements but does not supersede the motion for new trial or the right of appeal).

In light of the aforementioned many procedural protections, there is no need to reinterpret the statute of limitations which has been in effect in this State in basically the same form since 1858. Extending the time for filing a petition for writ of error coram nobis until one year after appellate proceedings have

---

[10]Tenn. R. Crim. P. 33 (new trial); Tenn. R. Crim. P. 37 & Tenn. R. App. P. 3(b) (appeal); Tenn. Code Ann. §§ 40-30-201 et seq. (1997 Repl.) (post-conviction); Tenn. Code Ann. §§ 29-21-101 et seq. (habeas corpus) (1980 Repl.).

[11]Tenn. Code Ann. § 40-30-202(b)(2)(1997 Repl.).

[12]Tenn. Code Ann. § 40-27-101 et seq. (1997 Repl.).

concluded would unnecessarily compromise society's interest in finality.

The State would also have us hold that a petition for writ of error coram nobis may not be filed until the end of appellate proceedings. At the very least, this approach would delay justice and perhaps entirely deny justice. For example, a defendant who discovers new evidence establishing actual innocence only one day after a notice of appeal is filed would be required to wait until the appellate process is concluded, perhaps years later, before filing a petition for writ of error coram nobis. We decline to adopt such a rule. To summarize and borrow from a statement made by the Florida Supreme Court when urged to adopt a similar rule, if rules of procedure have become so inflexible that courts are unable to provide timely relief to an innocent person wrongly convicted then "we have lost the creative faculty that we have always thought to be resident in the judiciary." Ex Parte Welles, 53 So.2d at 710.

As previously stated, we hold that a petition for writ of error coram nobis must be filed within one year of the time judgment becomes final in the trial court.[13] In this case the judgment became final in the trial court on March 20, 1995 when Mixon's motion for new trial was denied. Accordingly, the petition for writ of error coram nobis filed less than one year later on December 22, 1995 was timely.

## C. Procedure

---

[13]To the extent that Teague v. State, 772 S.W.2d 915 (Tenn. Crim. App. 1988), is inconsistent with our holding, it is hereby overruled.

In light of our conclusion that a petition for writ of error coram nobis is untimely unless filed within one year of the time a judgment becomes final in the trial court, it is clear that a timely petition for writ of error coram nobis will almost always be filed while an appeal is pending.[14] Pendency of the appeal does not divest the trial court of jurisdiction to consider the petition for writ of error coram nobis since a suit for writ of error coram nobis is a new action. Moore v. Moore, 431 S.W.2d 754, 755 (Tenn. 1968). Nonetheless, the coram nobis petition and the appeal both relate to the same conviction; therefore, we hereby adopt a procedure which applies when a petition for writ of error coram nobis is filed in the trial court during the pendency of an appeal. The procedure is designed both to accommodate a convicted defendant's ability to seek coram nobis relief and to promote judicial economy and conserve judicial resources.

On the same day that a petition for writ of error coram nobis is filed in the trial court, the petitioner should also file in the appellate court a motion requesting that the appellate proceedings be stayed pending the trial court's decision on the writ of error coram nobis. A copy of the petition should be attached to the motion. Under most circumstances, the motion to stay should be granted.[15] Ex Parte

---

[14]Cf. Pynes v. State, 66 So.2d 277 (Fla. 1953); Ex Parte Welles, 53 So.2d at 710 (in the absence of a specific time limitation, a petition for writ of error coram nobis must be filed within the time prescribed for filing an appeal as of right). To the extent that Edwards v. State, 491 S.W.2d 87 (Tenn. Crim. App. 1972), holds that a petition for writ of error coram nobis may not be filed while an appeal is pending, it is overruled.

[15]Grounds to deny the motion may exist if release of the appellate court's decision is imminent and the decision grants the petitioner a new trial, or the appellate court is able to determine that the petition is clearly time-barred, or the allegations of the petition clearly are insufficient in legal effect to support coram nobis relief. See 18 Am. Jur. 2d Coram Nobis and Allied Statutory Remedies § 32 (1985)( explaining a similar rule which requires petitioners to apply to the appellate court before filing a petition in the trial court and stating that an appellate court may deny the application if the facts alleged legally do not support coram nobis relief).

Welles, 53 So.2d at 710 ("if appeal has been taken to this Court the application may be made here for permission to apply to the trial court at any time before the case is decided. . . ."); cf. Spence v. Allstate Ins. Co., 883 S.W.2d 586, 596 (Tenn. 1994) (stating that a party who seeks relief in the trial court during the pendency of an appeal pursuant to Tenn. R. Civ. P. 60.02, which superseded the writ of error coram nobis in civil proceedings, must apply to the appellate court for an order of remand). Any appeal from the trial court's decision on the petition for writ of error coram nobis is to be consolidated with the defendant's pending appeal as of right. Tenn. R. App. P. 16(b) ("appeals involving a common question of law or common facts . . . may be consolidated by order of the appellate court on its own motion or on motion of a party").

If the trial court has granted a new trial on the petition for writ of error coram nobis and the State is appealing that decision, the appellate court should first consider the issues relating to the coram nobis proceeding. If the trial court's coram nobis decision to grant a new trial is affirmed, the issues raised in the defendant's appeal as of right become moot and need not be addressed by the appellate court. However, if the trial court denied the petition for writ of error coram nobis and the defendant is the appellant, the appellate court should first address the issues raised in the defendant's appeal as of right. If the appellate court determines that a new trial is required as a result of one or more of those issues, then the appellate court need not address the issues raised in the coram nobis appeal. This rule recognizes that coram nobis is an *extraordinary* procedural remedy in this modern regime. It fills only a slight gap into which few

cases fall. Penn, 670 S.W.2d at 573-74. It is appropriate, therefore, that an appellate court consider whether relief is available pursuant to the writ only after it has determined that none of the issues raised in a defendant's appeal as of right warrant a new trial.

In this case, Mixon properly filed the motion for stay in the appellate court, the Court of Criminal Appeals properly stayed the appeal as of right and later properly consolidated Mixon's appeal as of right and coram nobis appeal. The decision by the majority of the Court of Criminal Appeals, however, addressed only the issues raised in Mixon's coram nobis appeal and did not address the issues raised in Mixon's appeal as of right.

We agree with the Court of Criminal Appeals that the trial court erred when it held, as a matter of law, that recanted testimony does not constitute newly discovered evidence.[16] We also agree that the Court of Criminal Appeals enunciated the correct standard which should be applied by trial courts in

---

[16]As enacted in 1955, the criminal writ of error coram nobis statute generally did not encompass claims based upon newly discovered evidence. In Rowe v. State, 498 S.W.2d 322, 325-26 (Tenn. 1973), this Court specifically held that the writ of error coram nobis would not lie for recanted testimony because it related to a matter that had been litigated at the original trial. The holding in Rowe was superseded five years later, however, when the General Assembly amended the statute to specifically provide that

> [u]pon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment had it been presented at the trial.

1978 Tenn. Pub. Acts 738. The amendment was clearly intended to encompass recanted testimony. In fact, the sponsor of the proposed legislation stated on the Senate Floor that the amendment would permit a petition for writ of error coram nobis, if "after the time for filing a motion for new trial a person wrongly convicted discovers that a witness lied." 90th General Assembly, Remarks of Senator Victor Ashe, Senate Floor Session, March 22, 1978, Tape # S-124.

determining whether a new trial should be granted upon the basis of newly discovered recanted testimony.[17]  However, because of the extraordinary nature of the writ of error coram nobis, the Court of Criminal Appeals should have addressed those issues only if it had first determined that Mixon was not entitled to relief upon the issues raised in his appeal as of right.  This is particularly true in light of the fact that the Court of Criminal Appeals could not reach the merits of the coram nobis claim because the trial court's ruling was legally erroneous.

While the State urges us to remand this case to the Court of Criminal Appeals for resolution of the issues raised by the defendant in his appeal as of right, we decline.  We exercise our discretion in order to prevent needless litigation and to promote judicial economy and hereafter address the issues raised by the defendant in his appeal as of right to the Court of Criminal Appeals.  See Tenn. R. App. P. 13(b) ("[t]he appellate court . . . may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process.")  We conclude that Mixon is entitled to a new trial because the trial court erroneously allowed the State to use the defendant's prior conviction of sexual battery to impeach his testimony.  As a result, we need not address the merits of Mixon's claim that he is entitled to relief pursuant to the extraordinary remedy of

---

[17]The Court of Criminal Appeals held that a new trial should be granted upon the basis of newly discovered recanted testimony only if: (1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told.  Larrison v. United States, 24 F.2d 82, 87-88 (7th Cir. 1928); Cole v. State, 589 S.W.2d 941 (Tenn. Crim. App. 1979); Cooke v. State, 464 S.W.2d 324 (Tenn. Crim. App. 1970); Guy v. State, 443 S.W.2d 520 (Tenn. Crim. App. 1969).

writ of error coram nobis.

## III.

## IMPEACHMENT BY PRIOR CONVICTION

Mixon argues that the trial court erred by allowing the State to impeach his testimony by inquiring on cross-examination about his 1986 conviction of sexual battery because the probative value of the previous conviction on credibility did not outweigh its unfair prejudicial effect on the substantive issues involved in the trial. In response, the State contends that because the prior conviction for sexual battery was a serious offense, resulting in a ten year sentence, the trial court did not abuse its discretion by permitting the question. Alternatively, the State contends that any error was harmless because the error does not "affirmatively appear to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a).

We begin our analysis of this issue with Tenn. R. Evid. 609 which provides in pertinent part as follows:

> (a) For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:
>
> * * * *
>
> (2) The crime must be punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or if not so punishable, the crime must have involved dishonesty or false statement.
>
> (3) If the witness to be impeached is the accused in a criminal prosecution the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon

request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

(b) Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution; if the witness was not confined, the ten-year period is measured from the date of conviction rather than release. . . .

Accordingly, under Rule 609 the State may use a conviction to impeach the testimony of an accused in a criminal prosecution if the following four conditions are satisfied: (a) the conviction is for a crime punishable by death or imprisonment in excess of one year, or the conviction is for a misdemeanor which involved dishonesty or false statement; (b) less than ten years has elapsed between the date the accused was released from confinement and the commencement of the subject prosecution; (c) the State gives reasonable pretrial written notice of the particular conviction or convictions it intends to use as impeachment; and (d) the trial court concludes that the probative value of the prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. It is the last condition which is at issue in this appeal – whether the probative value of the sexual battery conviction on the defendant's credibility outweighed its prejudicial effect upon the substantive issues presented at trial.

In determining whether the probative value of a conviction on the issue of credibility outweighs its unfair prejudicial effect upon the substantive issues, two criteria are especially relevant. A trial court should first analyze the relevance the impeaching conviction has to the issue of credibility. Cohen, Sheppeard, Paine, Tennessee Law of Evidence § 609.9 at 376 (3d ed. 1995). Trial courts should

explain on the record how the impeaching conviction is relevant to the defendant's credibility. If the conviction is probative of the defendant's credibility, the trial court should secondly "assess the similarity between the crime on trial and the crime underlying the impeaching conviction." Id. When an impeaching conviction is substantially similar to the crime for which the defendant is being tried, there is a danger that jurors will erroneously utilize the impeaching conviction as propensity evidence of guilt and conclude that since the defendant committed a similar offense, he or she is probably guilty of the offense charged. State v. Barnard, 899 S.W.2d 617, 622 (Tenn. Crim. App. 1994); State v. Farmer, 841 S.W.2d 837, 839-40 (Tenn. Crim. App. 1992); Long v. State, 607 S.W.2d 482 (Tenn. Crim. App. 1980). Accordingly, the unfairly prejudicial effect of an impeaching conviction on the substantive issues greatly increases if the impeaching conviction is substantially similar to the crime for which the defendant is being tried. Therefore, trial courts should carefully balance the probative value of the impeaching conviction on credibility against its unfairly prejudicial effect on substantive issues.

The trial court in this case did not purport to determine whether the sexual battery conviction's probative value on credibility outweighed its unfair prejudicial effect on the substantive issues. The trial court interpreted Tenn. R. Evid. 609 as permitting impeachment by any and all felony convictions and did not explain the relevance of the sexual battery to Mixon's credibility. In this Court, the State does not explain how the sexual battery conviction is probative of the defendant's credibility, but says only that it was a serious offense. The relevance of the conviction to credibility certainly is not apparent from the record. However, the impeaching conviction is identical to one of the crimes for which Mixon was tried and substantially similar to the other charged offenses. As previously explained, under such circumstances, the danger of unfair prejudice is great. Accordingly,

we conclude that the trial court abused its discretion in allowing the State to impeach the defendant's testimony with the prior sexual battery conviction.

Moreover, we do not agree with the State's assertion that the error is harmless. This trial was strictly a credibility contest. The only proof that a crime occurred was the testimony of A.M. While admitting before the jury that he was guilty of public intoxication and evading arrest, Mixon testified unequivocally that he had not touched A.M. nor made inappropriate comments to her. The defendant instead said that he had argued with A.M. about her involvement with an eighteen-year-old male. While there is testimony in the record that A.M. had been crying and hysterical, this testimony certainly is not contradictory of Mixon's account of the incident. Obviously, because of the nature of the alleged touching, there is no medical proof in the record to corroborate A.M.'s testimony. During closing argument, the State repeatedly emphasized the prior sexual battery conviction. After acknowledging that, "this case comes down to a question of credibility," the State reminded the jury:

> [y]ou know about his credibility. You know about his past. The Court will tell you about impeachment. And I submit that the conviction of this defendant for the crimes in Mississippi of sexual battery, should be used to impeach his testimony -- impeach his testimony. He is not to be believed. He is not to be believed. So you have to decide who you want to believe -- him or her?

Unlike other situations in which the improper use of an impeaching conviction has been held to constitute harmless error, the evidence of guilt in this case is not overwhelming and the State emphasized the conviction to the jurors when urging them to find the defendant guilty. Under these circumstances we conclude that the trial court erred by allowing the State to use the sexual battery conviction to impeach the defendant's testimony, and the error is prejudicial

because it affirmatively appears to have affected the verdict. Tenn. R. Crim. P. 52(a); see also Tenn. R. App. P. 36(b) (reversal is appropriate if error involving a substantial right more probably than not affected the judgment). Accordingly, we reverse the defendant's convictions for attempted rape, attempted incest, and sexual battery and remand for a new trial.[18] Because the issue may again arise upon retrial, we will next address the defendant's claim that his double jeopardy right not to be punished twice for the same offense was violated when the jury convicted him of both attempted rape and sexual battery.

## IV.

## DOUBLE JEOPARDY

The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject to the same offense to be twice put in jeopardy of life or limb. . . ." Similarly, Article I, Section 10 of the Tennessee Constitution provides that "no person shall, for the same offence, be twice put in jeopardy of life or limb." As we have stated often and most recently in Stuart v. State Dep't of Safety, 963 S.W.2d 28, 32 (Tenn. 1998), three fundamental principles are encompassed within the federal and state constitutional protection against double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense. It is the third principle which the defendant claims was violated by his dual convictions for attempted rape and sexual battery.

---

[18]Because we have reversed and remanded for a new trial, we need not address the defendant's following claims: (1) the evidence was insufficient to support the convictions for attempted rape, attempted incest, and sexual battery; (2) the trial court should have granted a new trial because of an alleged relationship with the victim's mother and a juror and because a friend of the victim's family reported the testimony of other witnesses to the victim's mother who later testified in the case; and (3) the trial court imposed an excessive sentence.

In State v. Denton, 938 S.W.2d 373 (Tenn. 1996), we held that in order to determine whether multiple convictions for a single criminal action are constitutionally permissible, courts must apply the following four-prong inquiry:

> (1) a Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) analysis of the statutory offenses; (2) an analysis, guided by the principles of Duchac v. State, 505 S.W.2d 237 (Tenn. 1973) of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes.

Denton, 938 S.W.2d at 381. As we explained in Denton, no single factor is determinative; rather, the results of each must be weighed and considered. Id.

We begin with the Blockburger test which involves a comparison of the statutory elements of the offenses. Attempted rape requires proof both that the defendant attempted to sexually penetrate the victim and that the defendant's actions constituted a substantial step toward penetration. Tenn. Code Ann. § 39-12-101[19] and § 39-13-503[20] (1997 Repl.). Sexual battery requires proof that the defendant touched one of the victim's intimate parts or the clothing surrounding an intimate part and that the touching can be reasonably construed as being for the

---

[19]Under this statute, "[a] person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense: (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be; (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense. (b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the to commit the offense. (c) It is no defense to prosecution for criminal attempt that the offense attempted was actually committed."

[20]Rape is defined as the "unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances: (1) Force or coercion is used to accomplish the act; (2) The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent; (3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or (4)The sexual penetration is accomplished by fraud."

purpose of sexual arousal or gratification. Tenn. Code Ann. § 39-13-505[21] and § 39-13-501[22] (1997 Repl.). Clearly, the offenses involve different elements. Sexual battery requires proof that the sexual contact was for the purpose of sexual arousal or gratification; whereas attempted rape does not. Attempted rape requires proof of an attempted sexual penetration; whereas sexual battery only requires proof of sexual contact as defined in the statute. Application of the Blockburger test indicates that the offenses are not the "same" for double jeopardy purposes; however, our analysis does not end here.

We must next consider the evidence upon which the convictions were based. In this case, as in Denton, A.M.'s testimony that the defendant placed his hand on her inner thigh and made a statement of desire was the essential evidence used to establish both offenses. Moreover, this case involved only one victim and one discrete act of touching. Finally, both the attempted rape and sexual battery statutes are intended and designed to deter and punish sexually assaultive conduct.

Notwithstanding the application of Blockburger, therefore, based upon the particular facts giving rise to Mixon's convictions and the common purpose served by the two criminal statutes, we conclude that attempted rape and sexual battery in this case are the "same" offense under the double jeopardy clause of our state

---

[21]Sexual battery is defined as the "unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances: (1) Force or coercion is used to accomplish the act; (2) The sexual contact is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent; (3) The defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless; or (4) The sexual contact is accomplished by fraud. (b) As used in this section, 'coercion' means the threat of kidnapping, extortion, force or violence to be performed immediately or in the future."

[22]Sexual contact is defined as "the intentional touching of the victim's, the defendant's or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification."

constitution.  Accordingly, upon retrial, the defendant may not be convicted of both attempted rape and sexual battery.

## V.

### CONCLUSION

We have concluded that the trial court erred by allowing the State to impeach the defendant's testimony with a prior sexual battery conviction and that the error is not harmless.  We therefore need not address the merits of the defendant's claim for relief pursuant to the extraordinary remedy of writ of error coram nobis.  Accordingly, the judgment of the Court of Criminal Appeals which remanded this case to the trial court for further findings on the coram nobis claim is reversed.  The defendant's convictions of attempted rape, attempted incest, and sexual battery are vacated, and the case is remanded to the trial court for a new trial.  Because of the double jeopardy prohibition against multiple punishments for the same offense, the defendant, upon retrial, may not be convicted of both attempted rape and sexual battery.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**
Anderson, C.J.,
Birch, Holder, Barker, JJ.