# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned On Briefs November 6, 2012

## STATE OF TENNESSEE v. GREG LANCE

**Appeal from the Criminal Court for Putnam County**
**No. 99-0054    Leon Burns, Jr., Judge**

---

### No. M2012-01214-CCA-R3-CO - Filed December 11, 2012

---

Petitioner, Gregory Lance, was convicted of two counts of first degree murder, especially aggravated burglary, and arson. His convictions were affirmed on direct appeal. *State v. Gregory Lance*, No. M2001-02507-CCA-R3-CD, 2003 WL 1960270, at *1 (Tenn. Crim. App., at Nashville, Apr. 28, 2003), *perm. app. denied*, (Tenn. Oct. 27, 2003). Petitioner sought post-conviction relief. The denial of his petition was affirmed by this Court on appeal. *Gregory Paul Lance v. State*, No. M2005-01765-CCA-R3-PC, 2006 WL 2380619 (Tenn. Crim. App., at Nashville, Aug. 16, 2006), *perm. app. denied* (Tenn. Dec. 18, 2006). In March of 2012, Petitioner filed a petition for writ of error coram nobis. It was dismissed as untimely. After a review of the record, we affirm the dismissal of the untimely petition for coram nobis relief as Petitioner made no allegations that would toll the statute of limitations. Accordingly, the judgment of the coram nobis court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Greg Lance, Pro Se, Mountain City, Tennessee.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William E. Gibson, District Attorney General; and Anthony J. Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

The convictions at issue herein arose after the August 5, 1998, shooting deaths of the victims, a husband and wife, and the arson of their home. Our direct appeal opinion provides a synopsis of the evidence presented against Petitioner at trial:

> The record shows that the victims were seeking to foreclose on [Petitioner]'s trailer park. The victims were killed two days prior to a hearing on whether the foreclosure could go forward in light of [Petitioner] having filed for relief in bankruptcy. . . .

> Three witnesses testified that prior to the murders, [Petitioner] solicited their help in hiring someone to kill the victims or finding a stolen gun . . . .

> . . .

> Three days prior to the murders, [Petitioner] was seen target shooting at the Herron farm. Bullets and shell casings from the Herron farm were matched to a weapon found on the Bohannon farm near the victims' home. Bullets and shell casings from the murder scene and a bullet recovered from the victim's body also matched the same weapon found on Mr. Bohannon's farm. Erik Tanner and Keith Herbstreith both testified that they recognized the green cord and the black flashlight attached to the gun as having belonged to [Petitioner]. . . .

> In addition, Joel Brown and Steve Powell discovered two full cans of gasoline at the Herron farm on the evening of the day that [Petitioner] was seen at the property. The gas cans had not been there the day before. The gas cans remained there until the night before the murders. [Petitioner]'s shoes and socks were tested for the presence of gasoline, and the test revealed a gasoline range product. Hairs on the backs of [Petitioner]'s hands were singed.

> Mike Herron alerted [Petitioner] to the investigation when he called to ask [Petitioner] to check on his property. One day before investigators searched the Herron property, [Petitioner] was seen burning wood and dresser drawers, which the jury could reasonably conclude held bullet fragments from [Petitioner]'s target practice.

-2-

[Petitioner] traveled to Arizona following the murders. [Petitioner] refused to speak to Rocky Harmon on the phone after the murder, believing that his phone was tapped. [Petitioner] warned Harmon not to talk to investigators. When Erik Tanner returned to Tennessee from Arizona, [Petitioner] did not allow him to stay at his home and warned him to avoid the TBI.

*State v. Gregory Lance*, 2003 WL 1960270, at *17. As a result of the evidence presented against Petitioner at trial, he was convicted of two counts of first degree murder, especially aggravated burglary, and arson. He received an effective sentence of life imprisonment. We affirmed his convictions and sentence on direct appeal. *Id.* The Tennessee Supreme Court denied permission to appeal.

Subsequently, Petitioner filed a pro se petition for post-conviction relief in which he raised numerous claims, including ineffective assistance of trial and appellate counsel. *Gregory Paul Lance v. State*, 2006 WL 2380619, at *2. The post-conviction court held a hearing on the petition, during which five witnesses testified. *Id.* The post-conviction court denied relief. This Court affirmed the denial of post-conviction relief, stating:

> The record reveals that appellate counsel was an experienced trial and appellate attorney who spent many hours in preparation for the appeal. The record further reveals that appellate counsel provided a reasonable explanation for his reliance on the hearsay exception in Rule 404, testifying that he viewed it as a vehicle for the admission of both of Horn's statements, and not just the statement Horn allegedly made before the killings. Moreover, as revealed by the summary contained in this court's direct appeal opinion, the State presented a compelling circumstantial case against the petitioner, which included evidence linking him to the murder weapon and testimony by three witnesses that he solicited their help in hiring someone to kill the victims. Thus, even had hearsay testimony been admitted indicating that a third party had threatened to kill the victims, it is unlikely, given the accumulated evidence against the petitioner, that it would have changed the outcome of his trial. The petitioner has not, therefore, met his burden of demonstrating either that appellate counsel was deficient for failing to base his argument for the admissibility of the hearsay testimony on Rule 403(3), or that he was prejudiced as a result of counsel's alleged deficiency.

*Id.* at *6. Again, our Supreme Court denied permission to appeal.

On March 12, 2012, nearly six years later, Petitioner filed a petition for writ of error coram nobis. In the petition, he made various claims, including the assertion that newly-discovered evidence existed that proved his innocence. Specifically, Petitioner alleged that "trial counsel had an undisclosed conflict of interest" and when a conflict of interest is present, prejudice is presumed. Petitioner states that he discovered the conflict after he filed suit against the District Attorney under the Public Records Act. The State responded to the petition, arguing that the petition was untimely and should be dismissed. Further, the State insisted that a "conflict of interest" was not a proper basis for coram nobis relief.

The coram nobis court dismissed the petition as untimely on May 4, 2012. In the order dismissing the petition, the court stated:

> The petition has been filed over six (6) years outside the statute of limitations and does not allege "subsequently or newly discovered evidence that may have resulted in a different judgment, had it been presented at trial" as is required by statute.

Petitioner filed what appears to be a second petition for coram nobis relief on May 16, 2012.[1] There is no order disposing of this petition for relief in the record on appeal. Petitioner filed a timely notice of appeal, challenging the coram nobis court's dismissal of the first petition as untimely.

*Analysis*

On appeal, Petitioner argues: (1) the Supreme Court decision in *Wlodarz v. State*, 361 S.W.3d 490 (Tenn. 2012), includes a new trial hearing under the definition of trial such that he is entitled to relief herein; (2) the coram nobis court abused its discretion by failing to apply the *Wlodarz* standard; (3) the "Suspension Clause/Federal and State . . . Right to Court . . . is violated by there being no available relief for a hidden violation of the right to conflict

---

[1] In the second petition, Petitioner asserts: (1) that a juror came forward after trial claiming that the jury did not believe Petitioner committed the murders but voted guilty because they believed Petitioner knew who killed the victims; (2) the "[d]isbarred attorney general "manipulated" the State's star witness into providing false testimony at trial; (3) witness Herbstreith was granted immunity in exchange for false testimony; (4) the physical facts of the case "are controlling over eyewitness testimony"; (5) a newly discovered statement by Daron Dunn proves Petitioner's innocence; (6) State's counsel failed to disclose trial counsel's conflict of interest; (7) the State suppressed evidence of crime scene footprints, fingerprints, and photographs that exculpated Petitioner; (8) the State was aware that the murder weapon was sold to Sam Horn; (9) an affidavit from former FBI agent Jim Harcum proves that Robert Sheppard testified falsely at trial regarding whether the murder weapon was stolen from his business; (10) the trial testimony of Marlin Ray, Mike Snow, and Brian Brinker has been recanted; (11) plain error review requires an examination of the trial court's jury instructions on first degree murder and the lack of an instruction on solicitation; (12) a reenactment of the crime scene shows that the State's theory was physically impossible; (13) Tennessee Rule of Evidence 606(b) unconstitutionally prohibits Petitioner from presenting evidence in his favor; and (14) repeated and damaging actions by the State's attorney resulted in an unfair trial.

-4-

free counsel"; (4) the coram nobis court erroneously denied the petition for relief; and (5) the coram nobis court improperly refused to toll the statute of limitations. The State insists that the coram nobis court properly dismissed the petition as untimely and points out that Petitioner has raised issues on appeal that were not presented in the court below.

At the outset, we note that this appeal pertains solely to the dismissal of the petition for coram nobis relief filed on March 12, 2012. The trial court's order dismissing this petition does not address the petition filed by Petitioner in May. Petitioner's notice of appeal indicates that this is an appeal from the dismissal of the first petition for relief. Therefore, any issues raised in the second petition for coram nobis relief are not properly before this Court.

Relief by petition for writ of error coram nobis is provided for in Tennessee Code Annotated section 40-26-105. That statute provides, in pertinent part:

(b) The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

(c) The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

T.C.A. § 40-26-105 (b), (c). The writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). The "purpose of this remedy 'is to bring to the attention of the trial court some fact unknown to the court which if known would have resulted in a different judgment.'" *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1996)). The decision to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. *Teague v. State*, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988), *overruled on other grounds by Mixon*, 983 S.W.2d at 671 n.13.

A petition for writ of error coram nobis must relate: (1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner. *Freshwater v. State*, 160 S.W.3d 548, 553 (Tenn. Crim. App. 2004); *Hart*, 911 S.W.2d at 374-75. Our supreme court has held that the following analysis applies to the determination of whether a petition can be successful on a petition for a writ of error coram nobis, "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.'" *State v. Vasques*, 221 S.W.3d 514, 526 (Tenn. 2007) (quoting *State v. Vasques*, No. M2004-00166-CCA-R3-CD, 2005 WL 2477530 at *13 (Tenn. Crim. App. at Nashville, Oct. 7, 2005), *aff'd*, *Vasques*, 221 S.W.3d 526.

A petition for writ of error coram nobis must usually be filed within one year after the judgment becomes final. *See* T.C.A. § 27-7-103; *Mixon*, 983 S.W.2d at 670; *Freshwater*,160 S.W.3d at 553. It has been determined that a judgment becomes final, for purposes of coram nobis relief, thirty days after the entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion. *Mixon*, 983 S.W.2d at 670. It has been explained that:

> The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories, as are the grounds for reopening a post-conviction petition. Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time. Coram nobis claims therefore are singularly fact-intensive. Unlike motions to reopen, coram nobis claims are not easily resolved on the face of the petition and often require a hearing. The coram nobis statute also does not contain provisions for summary disposition or expedited appeals . . . . Although coram nobis claims also are governed by a one-year statute of limitations, the State bears the burden of raising the bar of the statute of limitations as an affirmative defense. *See Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995).

*Harris v. State*, 102 S.W.3d 587, 592-93 (Tenn. 2003).

Despite the statute of limitations, a trial court can consider an untimely petition if applying the statute of limitations would result in the denial of due process. *See Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001); *Burford v. State*, 845 S.W.2d 204, 209-10 (Tenn. 1992). The court should examine: (1) when the limitations period would normally have

begun to run; (2) whether the grounds for relief arose after the limitations period normally would have commenced; and (3) if the grounds are later-arising, would a strict application of the limitations period deny the petitioner a reasonable opportunity to present the claim. *Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995).

In the case herein, we agree with the State's argument that the petition for writ of error coram nobis is untimely. Petitioner's convictions was affirmed on direct appeal on April 28, 2003, and the supreme court denied permission to appeal on October 27, 2003. Petitioner then sought post-conviction relief, the denial of which was affirmed by this Court on August 16, 2006. The supreme court denied permission to appeal on December 18, 2006. Petitioner did not seek coram nobis relief until March of 2012, over six years later. Further, we agree with the coram nobis court that Petitioner does not present sufficient evidence to establish that either he is entitled to relief or that the statute of limitations should be tolled to permit the late filing of his petition as he has not shown that he was "without fault" in failing to previously present this evidence. T.C.A. § 40-26-105; *Mixon*, 983 S.W.2d at 668. Moreover, Petitioner has failed to demonstrate that the newly-discovered evidence may have resulted in a different judgment had the evidence been presented at trial. Lastly, Petitioner raises several issues in his brief on appeal that were not presented to the coram nobis court. Issues that are presented for the first time on appeal are considered waived. *See* Tenn. R. App. P. 36(a). Petitioner is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgment of the coram nobis court is affirmed.

_____
JERRY L. SMITH, JUDGE