IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 9, 2004

## STATE OF TENNESSEE v. JUAN LUIS RAVELL

**Direct Appeal from the Circuit Court for Giles County**
**Nos. 10009, 10010    Stella L. Hargrove and Jim T. Hamilton, Judges**

_____

**No. M2002-00988-CCA-R3-CD - Filed July 13, 2004**

_____

The defendant entered guilty pleas in Giles County to aggravated rape, especially aggravated burglary, and assault. After imposition of the sentences, but before the judgments became final, the defendant filed a *pro se* motion to withdraw the guilty pleas. The trial court denied the motion. The defendant also filed a motion alleging error *coram nobis*, which was denied by the trial court. Both denials were consolidated for this appeal. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

William J. Eledge, Lawrenceburg, Tennessee, for the appellant, Juan Luis Ravell.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; Mike Bottoms, District Attorney General; and Patrick S. Butler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The transcript of the guilty plea submission hearing reveals that in April 2001, the defendant forced entry into a private residence, assaulted the female occupant, and raped her anally and vaginally. Upon arrival, the police found the victim partially undressed and the defendant in the process of dressing.

In June 2001, the Giles County Grand Jury returned indictments against the defendant, charging him with resisting arrest, assault, especially aggravated burglary, and two counts of aggravated rape. On February 19, 2002, the defendant pled guilty to aggravated rape, especially aggravated burglary, and assault. Pursuant to the plea agreement, he was sentenced to twenty-five years at 100% for the aggravated rape. Sentences for the other offenses were ordered to run concurrently, for an effective sentence of twenty-five years. The judgments were entered on the date of the pleas.

On February 25, 2002, approximately one week after being sentenced, the defendant filed a *pro se* motion to withdraw his guilty pleas. In support of the motion, the defendant testified he entered the guilty pleas because he was afraid; other inmates were threatening his life; water was flowing into his cell from the floor drain; and law enforcement officers did not want to listen to him. The defendant further testified appointed counsel's fruitless efforts on his behalf led him to plead guilty, as did his fear of the trial judge. The defendant claimed he was placed on a liquid diet as punishment after a verbal altercation with the jail nurse and contended his guilty pleas resulted from problems he experienced on the liquid diet.

Counsel for the defendant testified that he had cross-examined the victim at the preliminary hearing and received a stack of discovery materials. The defendant told defense counsel he was able to read English and counsel left the discovery materials with the defendant for him to review. Defense counsel testified that he and his investigator went over the case with the defendant, discussing favorable and unfavorable evidence. Defense counsel stated there was no communication problem between himself and his client, and the defendant had no problem understanding the terms of the pleas. Defense counsel testified that the defendant expressed fear that a jury would not believe him because he was Hispanic, but did not express fear of the judicial system generally.

Jim McCasland, investigator for the District Public Defender, testified that he and defense counsel met with the defendant at the jail and discussed the discovery, the judicial process, and their client's options and rights. According to McCasland, the defendant seemed to understand the discussion, told them he wanted to plea bargain, and specified the offenses to which he would plead guilty. McCasland testified the defendant did not seem scared and was able to discuss the case and possible defenses.

Vicki Hanley, a registered nurse, testified the defendant was placed on a liquid diet on February 17, 2002, approximately two days prior to entering his guilty pleas. Hanley read from her medical report of February 17, 2002:

> [I]nmate complaining of nausea and vomiting. Inmate screaming at staffing nurse. I ask inmate what was wrong with him, he stated "f--- you." Again I ask, "are you sick?" Inmate stated, "I was sick because they would not move me from my cell." I asked him was he sick? Inmate screams, "f---, yeah, what do you think?" Inmate stated, "I just wanted the f---ers to move me." Again I asked, "are you sick or did you just want to be moved?" Inmate states, "you f---ing nurse, I told you I was sick so what are you going to do about it?" Inmate again started screaming, stating, "you dumb f---ers."
>
> There was no vomiting noted, denied diarrhea, skin warm and dry to touch, mucus membranes pink and moist. Inmate placed on clear liquids for two to three days and held in booking for observation.
>
> If inmate begins vomiting, he is to be taken to Hillside E.R. I explained this to the inmate. He began screaming "f--- you, you fat red-headed bitch. I don't care what you say." Inmate belligerent and

disrespectful to nurse. Inmate to remain in booking on clear liquids
for two to three days for close observation.

Hanley testified the defendant was not on a liquid diet prior to February 17, 2002.

In rebuttal, the defendant denied cursing the nurse and testified she told him she was putting him on a liquid diet for lying about being sick. He stated the liquid diet affected his ability to think clearly at the time of his pleas.

At the conclusion of the hearing, the trial court noted that it took special measures at the time of the guilty plea to insure that the defendant "understood the questions and gave appropriate answers in response to the questions." The court found the defendant understood the English language "very well." The court noted that defense counsel had given discovery materials to the defendant and reviewed the state's evidence "in a meticulous way." The court observed that both defense counsel and the investigator believed the defendant understood what he was facing, and the court also tried to be very thorough. The court further noted that, at the plea submission hearing, the defendant denied being threatened and did not indicate any lack of understanding. The trial court expressly accredited the testimony of defense counsel and his investigator and then found that the defendant's pleas were entered "freely and voluntarily with the advice of counsel." The court found no manifest injustice through "fear, duress or mistake or intimidation" and denied the motion to withdraw the pleas.

## I. WITHDRAWAL OF GUILTY PLEAS

The defendant challenges the trial court's ruling denying his motion to withdraw his guilty pleas. He urges various grounds in support of his argument, including that his pleas were made while under fear, duress and/or mistake. The defendant urges various facts in support of his broad legal contentions, including his status as a national of Mexico incarcerated in a foreign country, combined with his limited ability to speak the English language.

## A. Transcript of Guilty Pleas

The transcript of the defendant's guilty pleas indicates the trial court probed the defendant's comprehension of the proceedings. The trial court made inquiry into: the defendant's level of education; the defendant's comprehension of the paperwork involved in making his pleas; whether the defendant was under the influence of drugs or alcohol at the time of entering his pleas; whether the defendant understood that any false statements made under oath could subject him to prosecution for false statement; whether the defendant understood that he did not have to plead guilty, and that he had an absolute right to a trial by jury; whether the defendant understood that a trial would allow his lawyer to cross-examine state witnesses and call witnesses on his own behalf, while retaining his right to remain silent; and whether the defendant understood that by pleading guilty, he was giving up his right to a jury trial, as well as his right to appellate review. The defendant responded affirmatively to each inquiry.

The trial court further inquired: whether the defendant's pleas were the result of threats or promises; whether the defendant's lawyer had explained the elements of the crimes charged, which

-3-

the state would have to prove in order to convict him; and whether the defendant had any questions concerning them. The defendant affirmed the voluntariness of his pleas and that his lawyer had explained the elements which the state would have to prove. He stated he had no questions. The defendant stated he was pleading guilty because he was, in fact, guilty of the charges.

The trial court additionally inquired as to whether the defendant was satisfied with his lawyer, and whether the defendant wished to speak with the judge outside of his lawyer's presence. The defendant testified he was satisfied with counsel, and he did not wish to speak with the judge privately. The trial court then related the minimum and maximum sentences which could be applied for each crime if the defendant were tried and convicted, and inquired whether the defendant understood. The defendant affirmed he understood. In fact, the defendant testified he understood everything the trial court had said.

Finally, the trial court twice asked the defendant whether he wished the court to accept his pleas and the defendant twice answered affirmatively. In a subsequent inquiry, the following colloquy took place:

> The Court: Do you want to withdraw your plea?
> Defendant: No, it's okay, a hundred percent.
> The Court: You want to go forward with it?
> Defendant: It's okay. I already signed it, you know.
> The Court: You can back out right now, if you want to.
> Defendant: No, it's okay.
> The Court: I'll tear it up.
> Defendant: No, it's okay.
> The Court: You want me to accept the plea?
> Defendant: Yes, ma'am.

## B. Analysis

The defendant asserts he should be allowed to withdraw his guilty pleas in order to prevent manifest injustice, and the trial court's denial of his motion was an abuse of discretion. Generally, a defendant who submits a guilty plea is not entitled to withdraw the plea as a matter of right. State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995) (citing State v. Anderson, 645 S.W.2d 251, 253-254 (Tenn. Crim. App. 1982)). However, Rule 32(f) of the Tennessee Rules of Criminal Procedure authorizes a defendant to withdraw a guilty plea upon showing by the defendant of "any fair and just reason" if the sentence has not yet been imposed; but to correct "manifest injustice," the court, after sentence, but before the judgment becomes final, may set aside the judgment of conviction and permit the defendant to withdraw the plea. *Id*. at 354-55. The defendant has the burden of establishing "manifest injustice." *Id*. at 355.

A guilty plea becomes final thirty days after acceptance of the plea agreement and imposition of sentence. State v. Green, 106 S.W.3d 646, 650 (Tenn. 2003). In the instant case, the motion to withdraw the guilty pleas was filed after sentencing, but within the thirty-day period, allowing the defendant to withdraw his pleas only upon a showing of "manifest injustice." Tenn. R. Crim. P. 32(f).

As stated, the trial court found that the defendant's pleas were entered freely, voluntarily, knowingly, and on the advice of counsel. The trial court implicitly rejected the defendant's factual contentions. The court found no manifest injustice through fear, duress, mistake or intimidation, and, therefore, denied the defendant's motion to withdraw his guilty pleas. The decision to allow the withdrawal of a guilty plea is within the discretion of the trial court and will be affirmed on appeal absent an abuse of discretion. State v. Davis, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991). We conclude the trial court did not abuse its discretion in denying the motion. This issue is without merit.

## II. ERROR *CORAM NOBIS*

The defendant, a national of Mexico, contends his rights under the Vienna Convention on Consular Relations were violated when he was detained without being informed of his right to see and communicate with his consular representative. We interpret his claim to be that had he been informed of his right to consular communication, he would not have pled guilty. The trial court denied relief.

A trial court may grant a criminal defendant a new trial following a judgment of conviction under limited circumstances through the extraordinary remedy offered by a writ of error *coram nobis*. Tenn. Code Ann. § 40-26-105; State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). A writ of error *coram nobis* may be granted where the defendant establishes the existence of newly discovered evidence relating to matters litigated at trial if the defendant shows he was without fault in failing to present the evidence at the proper time, and if the judge determines the evidence may have resulted in a different judgment had it been presented to the jury. Tenn. Code Ann. § 40-26-105; Mixon, 983 S.W.2d at 668. In order for a defendant to be entitled to relief, he must establish a "reasonable probability" that the new evidence would have changed the results of the trial. State v. Workman, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002).

In the instant case, we assume the defendant's "newly discovered evidence" was his alleged right to consular communications. This does not satisfy the strict requirements of the error *coram nobis* doctrine; it was not litigated at a trial. Further, the defendant conceded at the *coram nobis* proceeding that he repeatedly advised the sheriff's department that he was an American citizen prior to entry of his pleas. He contended he did so because he got "into some problems [in Mexico]." The defendant was not "without fault" as he was the author of his alleged problem; thus, he does not meet the criteria for *coram nobis* relief. *See* Tenn. Code Ann. § 40-26-105. This issue is wholly without merit.

We affirm the judgments of the trial court.

_____
JOE G. RILEY, JUDGE

-5-