IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 6, 2007

GEORGE LANGFORD v. STATE OF TENNESSEE

Direct Appeal from the Criminal Court for Shelby County
No. 95-06078     Carolyn Wade Blackett, Judge

No. W2006-02765-CCA-R3-PC  - Filed April 7, 2008

Petitioner, George Langford, appeals the trial court's dismissal of his Petition for Writ of Error Coram Nobis and/or Petition for Post-Conviction Relief in which he contended that the trial court's instructions to the jury violated his constitutional right to due process. After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which and JAMES CURWOOD WITT, JR., and J. C. MCLIN, JJ., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, George Langford.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Karen Cook, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

Following a jury trial, Petitioner was convicted of first degree felony murder, aggravated burglary, aggravated assault, and reckless endangerment. The jury sentenced Petitioner to life imprisonment without the possibility of parole for his murder conviction. The trial court sentenced Petitioner as a Range I, standard offender, to four years for his aggravated burglary conviction, five years for his aggravated assault conviction, and two years for his reckless endangerment conviction. The trial court ordered Petitioner to serve these sentences concurrently but consecutively to his life sentence, for an effective sentence of life without the possibility of parole plus five years. The facts surrounding Petitioner's convictions were summarized by this Court on direct appeal as follows:

In the early morning hours of April 10, 1995, the defendant went to a duplex rented by his girlfriend, Diana Wilson, to see his children and get some of his clothes. He often stayed there but had been gone for several weeks prior to April 10. The defendant became jealous when he saw Wilson had a male visitor. Also in the duplex at the time were Wilson's female cousin, who was with another man in one of the bedrooms, Wilson[,] the defendant's two small children, and the 15-year-old victim, Tamara Gales.

Wilson refused to allow the defendant in the home. The defendant, who was accompanied by his brother and two friends, obtained a gun and fired into the living room window. The bullet just missed striking Wilson who was sitting on the couch. The bullet pierced an inner wall and entered a neighboring apartment. After the shot was fired, Wilson grabbed her 10-month-old son and ran to hide in a bedroom closet. She was joined by the victim. Everyone else, including Wilson's other child, escaped out a back window.

The defendant tried to kick in the front door, but was unable to get the door open. The defendant and his friend then forced the door open. Once inside he ran through the house looking for Wilson and the male visitor. He entered the bedroom, tore away at least one door from the closet, and shot into the closet where the victim was hiding with Wilson and her son. The bullet struck Tamara Gales, who was fifteen years of age, in the right temple just above the right eye. The bullet passed through the brain, the neck, and lodged at the spine in the back of the neck. The fatal injury caused bruising to her throat, swelling of the neck, and an inability to breathe. The victim died as a result of the injuries caused by the projectile.

Wilson's cousin, who had escaped out the back window, overheard Wilson and the defendant standing outside the duplex talking after the shooting. She heard Wilson tell the defendant he had killed the teenager to which the defendant replied, "he didn't give a f---." The defendant fled to Mississippi and eventually to Milwaukee, Wisconsin, where he remained for about a month.

The defendant took the stand at trial and said the shootings were accidental. He claimed he was using the gun to break the window and it went off when the gun struck the glass. Also, while he attempted to slide the closet doors back looking for the male visitor and during that action, the gun accidentally went off.

*State v. George Langford*, No. 02-C01-9703-CR-00099, 1997 WL 632805 (Tenn. Crim. App., at Jackson, Oct. 15, 1997).

This Court affirmed Petitioner's convictions and sentences on direct appeal. *Id*. The Tennessee Supreme Court granted Petitioner's application for appeal and also affirmed Petitioner's sentences and convictions. *State v. Langford*, 994 S.W.2d 126 (Tenn. 1999).

Petitioner filed a petition for post-conviction relief alleging the ineffective assistance of trial counsel. This Court affirmed the trial court's denial of post-conviction relief. *George Langford v. State*, No. W2001-00371-CCA-R3-PC, 2002 WL 1482802 (Tenn. Crim. App., at Jackson, Feb. 7, 2002).

## II. Petition for Writ of Error Coram Nobis and/or Post-Conviction Relief

Petitioner filed a petition for writ of error coram nobis and/or post-conviction relief on November 3, 2005. At the evidentiary hearing, Petitioner argued that he had discovered new evidence in the form of the testimony of Marlon Foreman. Petitioner contended that Mr. Foreman would have testified that Petitioner did not "have any intent of harming [his] girlfriend that night." Petitioner admitted that his trial counsel knew about Mr. Foreman at the time of trial, and that Mr. Foreman was incarcerated at that time. Petitioner conceded that he argued in his post-conviction petition that his trial counsel's assistance was ineffective for failing to interview all potential witnesses, and that this Court concluded that counsel's assistance in this regard was not deficient. *See George Langford*, 2002 WL 1482802, at *2-3 (noting that trial counsel testified at the evidentiary hearing that investigators from the Public Defender's Office had interviewed all potential witnesses who could be located). In his brief, other than including a portion of the transcript of the evidentiary hearing concerning Mr. Foreman's proposed testimony, Petitioner did not present any argument on this issue in his direct appeal. This issue is accordingly waived. Tenn. R. Ct. Crim. App. 10; Tenn. R. App. P. 27.

Petitioner also challenged the trial court's jury instruction on the defense of voluntary intoxication. In this appeal, Petitioner argues that the trial court's jury instruction on voluntary intoxication did not adequately define the term "involuntary intoxication," and the trial court's instruction that "it is the duty of persons to refrain from placing themselves in a condition which poses a danger to others," impermissibly injected the trial court's personal opinion into the instruction. Petitioner contends that these errors violated his constitutional right of due process.

Addressing first Petitioner's coram nobis claim, we note that the petition was filed well after the one-year statute of limitations applicable to such filings. T.C.A. §§ 27-7-103; 40-26-105; *State v. Mixon*, 983 S.W.2d 661, 671 (Tenn. 1999). However, "the State bears the burden of raising the bar of the statute of limitations as an affirmative defense." *Harris v. State*, 102 S.W.3d 587, 593 (citing *Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995)). The State's response to the petition did not challenge its timeliness. Nonetheless, we conclude that Petitioner has not stated a claim which is cognizable in an error coram nobis proceeding.

Tennessee Code Annotated section 40-26-105(b) provides that:

[u]pon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ or error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated

-3-

at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

The challenge to the trial court's jury instructions on voluntary intoxication could have been discovered by Petitioner and raised in a post-conviction petition or on direct appeal. Nor do Petitioner's allegations of improper jury instructions "amount to new evidence of innocence which would have resulted in a different judgment had it been presented at trial." *Freshwater v. State*, 160 S.W.3d 548, 556 (Tenn. Crim. App. 2004) (concluding that allegations of juror misconduct do not present a cognizable claim for coram nobis relief) (citing T.C.A. § 40-26-105; *State v. Doyle Hart,* No. 02C01-9612-CC-00451, 1997 WL 563613, at *6 (Tenn. Crim. App., at Jackson, Sept. 10, 1997), *no perm. to appeal filed*; *Kenneth C. Stomm v. State*, No. 03C01-9110-CR-00342, 1992 WL 97081, at *1 (Tenn. Crim. App., at Knoxville, May 12, 1992), *no perm. to appeal filed* (stating that "[t]he [coram nobis] proceeding is confined to errors outside the record and to matters which were not and could not have been litigated at trial, the motion for new trial, appeal, or upon post-conviction petition."); *State v. James D. "Sonny" Yarbrough*, No. 01C01-9001-CC-00012, 1990 WL 109107, at *2 (Tenn. Crim. App., at Nashville, Aug. 3, 1990), *perm. to appeal denied* (Tenn. Oct. 29, 1990) (noting that the remedy of error coram nobis is also not available on matters that were or could have been litigated in a post-conviction proceeding)). Thus, Petitioner is not entitled to relief on this issue.

Petitioner alternatively argues that the impropriety of the trial court's jury instructions entitles him to post-conviction relief. The Post-Conviction Procedure Act "contemplates the filing of only one (1) petition for post-conviction relief." T.C.A. § 40-30-202(c). After a post-conviction proceeding has been completed and relief has been denied, as in this case, the plain language of the statute provides only three grounds for reopening the proceedings: a new constitutional right that is given retroactive application, new scientific evidence of actual innocence, and evidence of an improperly enhanced sentence. *Id*. § 40-30-217(a)(1)-(3). A challenge to a trial court's jury instructions is not one of the statutory grounds for reopening a post-conviction proceeding. Thus, we conclude that the trial court did not err in denying Petitioner post-conviction relief.

**CONCLUSION**

After a thorough review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE