IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 21, 2008

## STATE OF TENNESSEE v. ROBERT CHARLES TAYLOR

**Direct Appeal from the Criminal Court for Bradley County**
**No. M-03-644    Carroll L. Ross, Judge**

---

**No. E2007-01868-CCA-R3-CD - Filed May 26, 2009**

---

Defendant was indicted for rape of a child, a Class A felony. Following a jury trial, Defendant, Robert Charles Taylor, was convicted of the lesser included offense of attempted rape of a child, a Class B felony. The trial court sentenced Defendant as a Range III, Career Offender, to thirty years. On appeal, Defendant argues that the evidence was insufficient to support his conviction. After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Charles Richard Hughes, Jr., District Public Defender; and Wayne Carter, Assistant Public Defender, for the appellant, Robert Charles Taylor.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Steve Bebb, District Attorney General; and Andrew Freiberg, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

### I. Background

The minors in this case, including the victim, will be referred to by their initials. C.W., the victim, testified that he was born on December 28, 1992, and he was ten years old in August 2003 when the incident occurred. C.W. said that he spent the night with his grandfather on August 16, 2003. The next morning he played and rode bikes with his friends. Later that day, C.W. said that Defendant approached him and his two friends and asked about M.B, another one of C.W.'s friends. Defendant said that he wanted to take M.B. camping. C.W. told Defendant that he wanted to join them, and Defendant agreed. C.W. said that he had not met Defendant prior to this encounter.

Defendant drove off, and M.B. approached C.W. a short time later. M.B. and C.W. went to M.B.'s house so that C.W. could call his mother, Brandy Swafford, and ask her permission to go on the camping trip. At first Ms. Swafford did not want C.W. to go, but then she said, "All right. Let me come to meet him, and I might let you go." C.W. said that he waited approximately one hour and then decided to leave with Defendant and M.B. without seeing Ms. Swafford.

The group drove toward the campground in Defendant's vehicle. Defendant stopped at a gasoline station, and the young men bought snacks. Defendant rented a cabin at the KOA Campground. It was growing dark, so the group unloaded the car and then watched television. C.W. said that the first floor was one large room with bunk beds against the wall and one larger bed. The bathroom was upstairs. C.W. said that he and M.B. talked as they got ready for bed. C.W. climbed into the top bunk of the bunk bed, M.B. got into the larger bed, and Defendant laid down on the bottom bunk. C.W. and M.B. continued to laugh and giggle. Defendant told them to stop, and then he reached for C.W. and told him to get into the bottom bunk. C.W. climbed down the bed's ladder, and Defendant grabbed him from the rear. Defendant pulled C.W. down until they were lying down on the bottom bunk with C.W. on top of Defendant's chest.

Defendant got up to go to the bathroom and returned in approximately five minutes. C.W. was lying beneath the covers of the bottom bunk bed wearing shorts and a tee-shirt. Defendant crawled into bed with him. C.W. woke up at some point during the night and discovered that he was naked. C.W. was lying on his stomach, and Defendant was kissing him on the outside of his buttocks. Defendant turned C.W. over and kissed C.W.'s groin area. Defendant took C.W.'s penis into his mouth and then flipped C.W. back on to his stomach. Defendant touched C.W.'s buttocks with his penis, and C.W. told Defendant that his uncle was a policeman. Defendant responded, "I don't care." C.W. acknowledged that this statement was not true, but he said that he was trying to make Defendant stop.

C.W. told Defendant to stop two or three times, and they wrestled. C.W. struck Defendant, and Defendant struck him back with a closed fist, bruising C.W.'s face. Defendant got out of the bunk bed, and C.W. tucked the covers under himself and went back to sleep. C.W. said that when he next woke up, Defendant was in bed with M.B. C.W. saw Defendant penetrate M.B. with his penis for approximately ten minutes, and then C.W. fell asleep again.

C.W. said that Defendant took the young men swimming the next morning and then they ate lunch at a fast food restaurant. Defendant laid his wallet on the table, and C.W. removed his driver's license and a key when Defendant was not looking. C.W. said that he wanted to let the police know Defendant's identity. C.W. told Defendant, "I just took something from you." Defendant asked what C.W. had taken several times. C.W. handed him the key, and Defendant put the key in his pocket.

Defendant bought some bottle rockets at a fireworks store, and they set them off in a field. Defendant next drove to a flea market and bought the boys several items. Defendant told the boys not to tell anyone about what happened the night before, and C.W. said, "Okay."

Defendant dropped C.W. off at his house. C.W. went to a neighbor's house across the street where he told seventeen-year-old "Eldon" what had happened in the cabin because he thought Eldon was a policeman. C.W. gave Eldon Defendant's driver's license. Eldon left to find C.W.'s parents. After they returned, his parents called the police.

On cross-examination, C.W. said that he did not remember talking with Tammy Walker at the Children's Advocacy Center on August 21, 2003. C.W. acknowledged that he reviewed the videotape of the interview three days before trial. C.W. said that he remembered saying that Ms. Swafford had told him that he could not go with Defendant to the campground. C.W. said that he did not remember stealing a ball from the convenience store where they stopped before arriving at the campground. C.W. did not remember telling Ms. Walker that he had seen cocaine, a rifle, and a pistol in Defendant's car, or that he had thrown six thousand dollars in currency out of Defendant's car window. C.W. said that M.B. also struggled with Defendant and hit Defendant with a broom.

C.W. stated that he did not remember previously filing a complaint against his uncle, Josh King, for sexual abuse. He also testified that he did not remember filing a similar complaint against Ryan Rogers. C.W. acknowledged that a KOA Campground brochure did not depict a television in the displayed cabin, but C.W. insisted that the cabin Defendant rented had a television.

Detective Donald Leon Shahan with the Bradley County Sheriff's Department testified that he was a deputy sheriff at the time of the incident. Detective Shahan interviewed C.W. and Ms. Swafford on August 17, 2003. Detective Shahan stated that C.W. had a bruise above his left eye which appeared to be consistent with a blunt force trauma to the forehead. Detective Shahan said that he was given Defendant's driver's license during the interview. Detective Shahan also interviewed M.B. and M.B.'s mother before turning the case over to the criminal investigation division.

On cross-examination, Detective Shahan stated that he was present when Defendant was arrested, and he said that he could not recall seeing any marks or abrasions on Defendant. Detective Shahan did not recall seeing any drugs or weapons in Defendant's vehicle.

Detective Carl Maskew with the Bradley County Sheriff's Department testified that he obtained a receipt from the KOA Campground for one adult and two children for the rental of a cabin on August 16, 2003, with departure on August 17, 2003. The receipt was signed "Robert Taylor." Detective Maskew and other uniformed officers went to the residence of Defendant's sister to locate Defendant. The sister opened the door in response to their knock. One of the police officers shouted, "Someone's running out the back door." The police officers searched the back yard and located Defendant hiding in a large dog house.

Defendant was transported to the sheriff's department and signed a written waiver of his <u>Miranda</u> rights at 12:40 a.m. on August 18, 2003. Defendant gave a brief statement in which he admitted being at the campground but said that if he had wanted to sexually abuse the boys, "he would have drugged them."

On cross-examination, Detective Maskew identified three other KOA Campground receipts, all signed by "Robert Taylor," for the rental of cabins on August 2, 2003, for two adults, one child; August 3, 2003, for two adults, one child; and August 9, 2003, for one adult, two children.

The trial court read the following stipulations into the record as agreed upon by Defendant and the State:

> (1) As a result of the investigation of this matter, C.W. was seen by a medical doctor. The eye injury was minor.

> (2) The results of the medical examination revealed no physical evidence to support a sexual assault.

> (3) As a result of the investigation of this matter, M.B. was seen by a medical doctor three days after the allegation.

> (4) The results of the medical examination revealed no physical evidence to support a sexual assault.

> (5) Generally, there may be no physical evidence of an anal assault beyond seventy-two hours of the assault.

The State rested its case-in-chief, and Defendant presented his defense. M.B. testified that he was thirteen years old at the time of trial. M.B. testified that he, Defendant, and C.W. went on a camping trip together. M.B. acknowledged that he remembered a conversation between Defendant and C.W. after C.W. stole a ball from a convenience store. M.B. said the group went swimming after they reached the campground and then went to bed. M.B. stated that there was no television in the cabin. M.B. testified that he fell asleep that night and did not wake up until the next morning. M.B. could not remember talking to the Children's Advocacy Center, the Department of Human Services, or the police about C.W.'S allegations.

On cross-examination, M.B. said that he observed Defendant crawling into the lower bunk bed with C.W. before M.B. got into the big bed. M.B. said that Defendant was lying on top of the bed covers. M.B. said that Defendant was in C.W.'s bed for "probably most of the night." M.B. acknowledged that he remembered telling Ms. Walker that he thought he was in trouble and that Defendant was "nasty" because he "touched kids." M.B. denied that Defendant touched him sexually and stated that he did not know if Defendant has touched C.W. On redirect examination, M.B. stated that he did not know how long Defendant was in C.W.'s bed because he was asleep.

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his conviction of attempted rape of a child. Defendant acknowledges that the evaluation of a witness's credibility rests with the jury, but he contends that the evidence presented significantly contradicted C.W.'s testimony. C.W.

denied stealing a ball from the convenience store next to the campground as related by M.B. M.B. testified that there was no television in the rental cabin as described by C.W. on direct examination, which was supported by the campground's brochure. Finally, M.B. denied that Defendant anally penetrated him while the group was at the cabin as testified by C.W.

The State argues that Defendant has failed to affirmatively show that he filed a timely notice of appeal because the notice of appeal is not contained in the technical record. According to the technical record, the trial court's order denying Defendant's motion for new trial was filed on July 18, 2007. Although the date stamp is difficult to read, it appears that Defendant's notice of appeal was filed in the Bradley County Criminal Court on August 17, 2007. See Tenn. R. App. P. 4(a), (e) (requiring a notice of appeal to be filed within thirty days of the entry of judgment or the entry of an order denying motion for new trial). The notice of appeal was filed with the court of criminal appeals on August 20, 2007, and is contained within the court file pertaining to this case. Accordingly, we will address Defendant's issues concerning the sufficiency of the evidence.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense

(1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

(2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

T.C.A. § 39-12-101(a)(1)-(3).

Rape of a child is defined as the "unlawful sexual penetration of a victim by the defendant ... if such victim is less than thirteen (13) years of age." Id. § 39-13-522(a). "'Sexual Penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Id. § 39-13-501(7). Attempted rape requires proof both that the defendant attempted to sexual penetrate the victim and that the defendant's action constitutes a substantial step toward penetration. State v. Mixon, 983 S.W.2d 661, 676 (Tenn. 1999).

Thus, for the jury to find Defendant guilty of attempted child rape, it had to find that the State proved beyond a reasonable doubt that Defendant acted with the intent to sexually penetrate C.W., that Defendant took a substantial step toward doing so, and that C.W. was under the age of thirteen, or the defendant believed C.W. was under the age of thirteen.

C.W. testified that he was born in 1992 and was ten years old at the time of the incident. C.W. stated that Defendant pulled him down from the top bunk and got into bed with him in the lower bunk. C.W. was wearing shorts and a tee-shirt when he fell asleep but found himself undressed when he woke up later that night. C.W. testified that Defendant kissed him in the buttocks area, flipped him over, kissed him on the genital area, took C.W.'s penis in his mouth, and then flipped C.W. over again at which time he attempted to penetrate C.W. anally with his penis. C.W. said that he struggled with Defendant, and that Defendant struck him leaving a bruise above his left eye. After the struggle, Defendant got out of C.W.'s bed.

Detective Shahan observed a bruise over C.W.'s left eye when he interviewed C.W. and Ms. Swafford immediately after the incident. The medical examination noted that the facial injury was minor. M.B. testified that Defendant got into C.W.'s bunk bed and laid down over the bed covers.

The jury heard C.W.'s and M.B.'s testimony, and, by their verdict, obviously resolved any conflicts in favor of the State. Viewing the evidence in a light most favorable to the State, we conclude that a rational trier of fact could find beyond a reasonable doubt that Defendant was guilty of the offense of attempted rape of a child. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the trial court.

THOMAS T. WOODALL, JUDGE