IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 11, 2012

**JERRY D. CARNEY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 97-D-2821      Cheryl Blackburn, Judge**

**No. M2011-02766-CCA-R3-CO - Filed October 22, 2012**

The *pro se* petitioner, Jerry D. Carney, appeals the dismissal of his third petition for writ of error coram nobis, arguing that due process should toll the statute of limitations and that he is entitled to coram nobis relief on the basis of newly discovered evidence of the criminal activities and official misconduct of the medical examiner who testified at his trial. Following our review, we affirm the dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Jerry D. Carney, Henning, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In 1998, the petitioner was convicted by a Davidson County Criminal Court jury of the first degree murder of Craig Cartwright and was sentenced by the trial court to life with the possibility of parole. His conviction was affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal. State v. Jerry D. Carney, No. M1999-01139-CCA-R3-CD, 2000 WL 1335770, at *1-2 (Tenn. Crim. App. Sept. 15, 2000), perm. app denied (Tenn. Apr. 24, 2001). Our direct appeal opinion provides the following summary of the proof presented at trial:

On the night of August 13, 1997, the [petitioner], Jerry Carney, was "riding around" Nashville and drinking beer with his friends Eric Bradshaw, Mike Shane, Jimmy Womack, and Melia Gribble. Erin Harris, another friend, paged the [petitioner] and requested that he pick her up at 716 Virginia Avenue. On the way to Virginia Avenue, Bradshaw remarked that he believed that someone who had a problem with his brother, someone named "Shane" or "Shawn," lived at that address.

Upon arriving at the residence, the four males exited the car and began urinating in the front yard. Bill Massey and [the victim] walked out of the residence to investigate. The [petitioner] began asking several people, "Who is Shane?" [The victim] responded that he was Shane. Upon hearing [the victim] identify himself as Shane, the [petitioner] quickly walked back to the vehicle and sat in the back seat behind the driver.

Massey approached the car on the driver's side and noticed a gun on the seat near the [petitioner]. Massey asked if the [petitioner] had a problem. The [petitioner] replied that there was no problem. Massey then requested one of the beers that was located in the back seat. The [petitioner] handed Massey a beer. As soon as Massey touched the beer, the [petitioner] grasped the gun with both hands. Massey threw down the beer and grabbed the [petitioner], hoping to disarm him. [The victim] had moved to the passenger side of the car. Although Massey was in direct contact with the [petitioner], the [petitioner] never looked at Massey. Instead, the [petitioner] pulled the slide of the gun back twice and fired six shots into [the victim] who was standing near the open passenger door.

The [petitioner], Bradshaw, Shane, Womack, Gribble, and Harris sped away in the car to Bradshaw's house. The [petitioner] took a shirt and wiped the car, inside and out, in order to destroy evidence. He also removed a decal from the back glass of the car and tried to remove all of the spent shell casings from the car. The [petitioner] entered Bradshaw's house, removed his bloody clothes, and soaked them in water in the bathtub. He then went to sleep and slept until the next day when he was picked up by the police for questioning.

The [petitioner] testified that he shot [the victim] in self-defense. The [petitioner] stated that he was afraid of Massey and [the victim] because they were much larger than he. The [petitioner] claimed that Massey had grabbed the [petitioner] by the shirt collar prior to the [petitioner's] retreat to the car. The [petitioner] alleged that he feared Massey or [the victim] would hurt him

or try to take his gun and use it against him.

Id.

The petitioner later filed a petition for a petition for post-conviction relief and a petition for writ of habeas corpus, both of which were denied. See Jerry D. Carney v. State, No. M2002-02416-CCA-R3-PC, 2005 WL 351238, at *1 (Tenn. Crim. App. Feb. 14, 2005), perm. app. denied (Tenn. June 20, 2005), and Jerry D. Carney v. David Mills, Warden, No. W2004-01563-CCA-R3-HC, 2004 WL 2756052, at *1 (Tenn. Crim. App. Dec. 2, 2004). Among other things, the petitioner alleged in the post-conviction petition that trial counsel was ineffective for failing to object to the medical examiner's testimony concerning the autopsy report, which was of the wrong victim. 2005 WL 351238, at *7. This court affirmed the post-conviction court's findings that the petitioner was not prejudiced by the erroneous report because whether the petitioner shot and killed the victim was not an issue at his trial:

> As the post-conviction court stated, the petitioner asserted self-defense as a defense and whether he shot the victim or not was not an issue in the trial. In addition, the autopsy report was never shown to the jury and trial counsel had the opportunity to cross-examine the witness regarding the autopsy report. For these reasons, we conclude that the evidence does not preponderate against the post-conviction court's conclusions.

Id. at *8.

On September 10, 2004, the petitioner filed a *pro se* petition for writ of error coram nobis in which "he alleged various pieces of favorable evidence were withheld at trial by the State." Jerry D. Carney v. State, No. M2005-01904-CCA-R3-CO, 2006 WL 2206045, at *2 (Tenn. Crim. App. July 31, 2006). The trial court dismissed the petition on the grounds that it was untimely, that several of the petitioner's allegations of favorable evidence had been previously addressed, and that the two remaining pieces of allegedly favorable evidence, which consisted of a piece of the petitioner's clothing and a hair that had been found on the victim, were not newly discovered and would not have changed the outcome of the trial. Id. at *2-4. On appeal, this court affirmed the judgment of the trial court by memorandum opinion pursuant to Rule 20, Rules of the Court of Criminal Appeals. Id. at *1.

On May 2, 2006, the petitioner filed a second petition for writ of error coram nobis in which he claimed that he had first learned at the hearing on his first petition for writ of error coram nobis "that a .22 caliber gun listed on a police report was actually found inside the vehicle in which the fatal shooting had taken place." Jerry D. Carney v. State, No. M2006-01740-CCA-R3-CO, 2007 WL 3038011, at *2 (Tenn. Crim. App. Oct. 17, 2007).

The trial court dismissed the petition on the basis that it was untimely and failed to state a claim for error coram nobis relief, and this court affirmed the judgment. Id. at *2-3.

Finally, on September 15, 2011, the petitioner filed this, his third petition for writ of error coram nobis, or, in the alternative, motion to reopen his previously filed coram nobis petitions. In the instant petition, the petitioner alleges that the medical examiner's 2010 Mississippi arrest and subsequent guilty plea conviction to felony possession of marijuana and his 2010 Tennessee guilty plea conviction to official misconduct constitute newly discovered evidence that would have altered the outcome of his trial. The petitioner argues that the medical examiner's "negligent and deceptive acts" at the petitioner's trial and his "recent felonious act and official misconduct," show that the medical examiner was not credible and that he committed fraud and aggravated perjury at the petitioner's trial.

On November 14, 2011, the trial court entered a detailed written order dismissing the petition on the grounds that it was untimely, that there were no due process grounds that required the tolling of the statute of limitations, and that the petition failed to state a cognizable ground for error coram nobis relief. This appeal followed.

## ANALYSIS

A writ of error coram nobis is an extraordinary remedy by which the court may provide relief from a judgment under only narrow and limited circumstances. State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). Tennessee Code Annotated section 40-26-105 provides this remedy to criminal defendants:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

Tenn. Code Ann. § 40-26-105(b), (c) (2006).

The decision to grant or deny a petition for writ of error coram nobis based on newly discovered evidence lies within the sound discretion of the trial court. See Tenn. Code Ann. § 40-26-105; State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). We review this

-4-

issue, therefore, under an abuse of discretion standard.

We conclude that the trial court properly dismissed the petition. First, we agree that the petition was untimely and that the petitioner has shown no reason that the statute of limitations should be tolled. The time limit for seeking a writ of error coram nobis is one year from the date the judgment becomes final in the trial court. See Tenn. Code Ann. §§ 40-26-105, 27-7-103; Mixon, 983 S.W.2d at 667. As the court noted, the limitations period would have begun to run in April 2001, which makes the instant petition ten years late. Moreover, the petitioner's speculation regarding the possible drug use and misconduct of the medical examiner at his 1998 trial, which he bases on the medical examiner's 2010 official misconduct and criminal convictions, does not constitute a due process violation that would require that the statute of limitations be tolled. We also agree with the trial court that the petitioner has failed to state a cognizable claim for error coram nobis relief, as the medical examiner's 2010 convictions are unrelated to the petitioner's 1998 trial. Accordingly, we affirm the dismissal of the petition for writ of error coram nobis.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court dismissing the petition for writ of error coram nobis.

_____
ALAN E. GLENN, JUDGE

-5-