# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 9, 2014 Session

## STATE OF TENNESSEE v. LETIVIAS D. PRINCE

**Appeal from the Circuit Court for Williamson County**
**No. CR031007        Jeffrey S. Bivins, Judge**

_____

**No. M2014-00260-CCA-R3-ECN - Filed December 11, 2014**

_____

The petitioner, Letivias D. Prince, appeals the Williamson County Circuit Court's summary dismissal of his petition for writ of error coram nobis, which challenged his 1997 jury conviction of first degree murder.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

John G. Oliva, Nashville, Tennessee, for the appellant, Letivias D. Prince.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Kim R. Helper, District Attorney General; and Ronald L. Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

        In 1997, a Williamson County Circuit Court jury convicted the petitioner of first degree premeditated murder for shooting the victim, Richard Clinton Fly, and the trial court imposed a sentence of life imprisonment.  *See State v. Letivias Prince*, No. M1998-00005-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Nashville, Aug. 10, 2000).  This court affirmed the petitioner's conviction on direct appeal, *see id.*, and similarly affirmed the denial of the petitioner's subsequent petition for post-conviction relief, *see Letivias D. Prince v. State*, No. M2003-00166-CCA-R3-PC, slip op. at 1 (Tenn. Crim. App., Nashville, Jan. 27, 2004), *perm. app. denied*, *Letivias D. Prince v. State*, No. M2003-00166-SC-R11-PC (Tenn. June 21, 2004).

On March 24, 2005, the petitioner filed a petition for writ of error coram nobis, claiming entitlement to coram nobis relief on grounds that newly discovered evidence in the form of an incident report wherein a potential witness identified someone other than the petitioner as the perpetrator of the victim's murder. The coram nobis court held a hearing on the petition on November 1, 2005.

At the hearing, Franklin Police Department Officer Charles Kirby testified that on the morning following the overnight shooting of the victim, he was called to the lobby of the police department to take "a walk-in report that was to be related to that investigation." He interviewed the witness, Michael Baer, who claimed to have seen a person other than the defendant shoot the victim. According to the report prepared by Officer Kirby and exhibited to the hearing, Mr. Baer alleged that a person named Terry "Belefont" had shot the victim. Officer Kirby said that after taking the statement, which was at that time written on carbon paper, he marked the statement "CID only" because it was otherwise the practice to send one copy of the report to the records division, one to the investigators, and another "into a box for the media." He explained that officers were trained to write "Do not release, CID only, across the top of the report" for cases still under investigation so that the reports would "not . . . be released to the media." Officer Kirby denied any intent to hide the report from the State or the defendant.

Mr. Baer testified that he knew the victim "through friends" and that after he learned that the victim had been killed, he went to the police department and told them that someone named "Bellefont" had shot the victim. He said that he did not remember having made the report "until the next morning when [he] was called into detectives." Mr. Baer, who admitted having been "a heavy drinker back then," did not recall having made the report to Officer Kirby and could not explain why he had made the report about a shooting that he did not actually witness. He said, "I mean it's obvious I did make that up that night. . . . I didn't see it. I didn't do it. I don't know who did it . . . ." He claimed that he learned the pertinent facts about the victim's murder from a man named Tom Steward. Mr. Baer later pleaded guilty to a charge of filing a false police report. He stated that, had he been called to testify at the petitioner's trial, he "would have testified [to] nothing," adding, "I mean I wasn't there and didn't see it."

Franklin Police Department Sergeant Ricky Brown testified that he was the lead investigator into the victim's murder and that he had been provided Mr. Baer's statement by Officer Kirby. Sergeant Brown interviewed Mr. Baer three days later, and, during that interview, Mr. Baer told Sergeant Brown "that he made everything up" based upon "what he's heard from other people" because "he was intoxicated." Officer Kirby, however, made no note of Mr. Baer's having been intoxicated. Sergeant Brown charged Mr. Baer with filing a false police report, and Mr. Baer pleaded guilty to the charge.

The petitioner's trial counsel testified that he filed both general and specific requests for exculpatory evidence and that he did not receive from the State at any time the report that Mr. Baer made to Officer Kirby. Counsel noted that he presented alternative theories of defense at the petitioner's trial, arguing that the petitioner did not shoot the victim but that if he did, he acted in self-defense. These alternative theories fit the evidence, including the petitioner's own confession, that he fired a gun after having an argument with the victim. Counsel recalled that during his pretrial investigation, he received information that a person named Dee Dee Cannon "could possibly have been the shooter." The primary forensic evidence connecting the defendant to the crime was "a slug" recovered from the victim's truck that had blood on it and that was connected to the petitioner's gun by ballistics testing.

Counsel testified that after the petitioner's appeal of the denial of his petition for post-conviction relief had concluded, the petitioner's family sent him a copy of Officer Kirby's report that had been obtained via a request through the Open Records Act. Counsel said that, had he had that report prior to the petitioner's trial, he "would have been able to investigate that and find out if there's anything to this." Counsel later learned that Mr. Baer had pleaded guilty to filing a false police report and had been sentenced for that offense prior to the petitioner's trial. Nevertheless, counsel believed that he would have been "obliged to put him on the stand to bring out the fact that this is someone who made this statement" so that the jury could "at least consider the possibility that this is another theory on what happened that night." Counsel insisted that he could have impeached Mr. Baer with the police report if Mr. Baer had testified at the petitioner's trial in a manner consistent with his guilty plea. He added, "[W]e're trying to create confusion. We're trying to create reasonable doubt and this is just another weapon that I could have used to create reasonable doubt."

Former Assistant District Attorney General John Barringer testified that he tried the petitioner's case alongside District Attorney General Joe Baugh. At some point during the investigation, Mr. Barringer learned from Sergeant Brown that Mr. Baer "had filed a false report that was associated with the Letivias Prince case." Mr. Baer later told Mr. Barringer "that he had made the whole thing up" as a result of his "alcohol problems and . . . some crack problems." Mr. Baer "said that he made up the person's name and that he just made up the whole thing and he didn't really have an explanation." After speaking with Mr. Barringer, Mr. Baer agreed to plead guilty to the charge of filing a false police report in exchange for a sentence of 90 days to be suspended after service of 10 days in jail.

Mr. Barringer said that, "to the best of [his] recollection," he told trial counsel about Mr. Baer's having filed a false report in relation to the petitioner's case, but he could not recall whether he had turned the actual report over to counsel. It was also his recollection that counsel agreed "that it was really irrelevant." Mr. Barringer did not believe the report

to be exculpatory because Mr. Baer had already recanted and pleaded guilty to making a false report. He characterized Mr. Baer's statement as "such an aside," adding, "I mean it happened pretty early on in the case. He pled guilty and was already on probation. . . . [I]t just wasn't a major issue." Mr. Barringer recalled that ballistics testing established that the petitioner's gun fired the bullet "that had gone actually through Mr. Fly's head and was found in the . . . floor board of the truck."

At the conclusion of the hearing, the coram nobis court took the petition under advisement. In an order issued on January 13, 2014,[1] the court denied coram nobis relief, finding that "there is no reasonable basis to conclude that the result of the trial might have been different if the information had been disclosed." Although the court agreed that the statement was exculpatory and should have been disclosed to the petitioner prior to trial, the court accredited Mr. Baer's testimony that "his intoxicated state was a triggering factor in his unadvisable decision to make the initial false statement indicating an unidentified Mr. Belefont was Ricky Fly's murderer" and that "he had no first-hand knowledge of the murder and only reported what he had been told by others." The court concluded, "Thus, Mr. B[ae]r's statement, even assuming it would have been admissible at trial, would have had little, if any, to offer in the way of exculpatory assistance to the petitioner at trial."

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (citation omitted). Coram nobis relief is provided for in criminal cases by statute:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different

[1]In the order, the coram nobis court acknowledged the delay between the 2005 hearing and the filing of the order, attributing it to oversight. In 2011, the trial judge, Judge Jeffrey S. Bivins, was appointed to this court, which appointment would ordinarily have deprived him of the authority to enter the order more than 60 days after his appointment. *See* T.C.A. § 17-1-304(b). On August 31, 2011, however, the chief justice of our supreme court entered an order designating Judge Bivins to preside over all those cases pending at the time of his appointment until their conclusion.

judgment, had it been presented at the trial.

T.C.A. § 40-26-105(b) (2006); *see State v. Vasques,* 221 S.W.3d 514, 525-28 (Tenn. 2007) (describing standard of review as "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different'" (citation omitted).

> The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories, as are the grounds for reopening a post-conviction petition. Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time. Coram nobis claims therefore are singularly fact-intensive. Unlike motions to reopen, coram nobis claims are not easily resolved on the face of the petition and often require a hearing.

*Harris v. State*, 102 S.W.3d 587, 592-93 (Tenn. 2003). The decision to grant or deny coram nobis relief rests within the sound discretion of the trial court. *Vasques*, 221 S.W.3d at 527-28.

We agree with the coram nobis court's assessment that, even if the petitioner could have overcome the substantial hurdle of admissibility at trial, Mr. Baer's statement would not have changed the outcome of the trial. Mr. Baer testified at the coram nobis hearing that he did not witness the victim's murder and that he did not know who had perpetrated the act. Because Mr. Baer had already recanted the statement and pleaded guilty to filing a false police report prior to the petitioner's trial, it is easy to assume that Mr. Baer would have offered similar testimony had he been called as a witness at the petitioner's trial. Assuming for the sake of argument that the petitioner could have impeached Mr. Baer with the police report,[2] the report would still have offered little in the way of exculpatory evidence

---

[2]This is a mighty assumption indeed in light of the fact that the actual report is Officer Kirby's recitation of his conversation with Mr. Baer, making it hearsay within hearsay not covered by any exception to the hearsay rule, *see* Tenn. R. Evid. 803(8) (expressly excluding police reports from the public records and reports hearsay exception); *see also* Tenn. R. Evid. 803(26), Advisory Comm'n Comments ("A 'police report' . . . of the recorded statement would not qualify [for admission as substantive evidence as a prior inconsistent statement] since it is not literally the witness's own words contained on audio or video media."), and considering that "[d]ecisional law prohibits a lawyer from calling a witness -- knowing the testimony will be adverse to the lawyer's position -- solely to impeach that witness by an inconsistent statement," Tenn.

(continued...)

after the jury was made aware that Mr. Baer not only recanted but accepted legal liability, including a period of incarceration, for making "the whole thing up." Although the statement should have been disclosed to the petitioner prior to his trial, we cannot say that, had the evidence been admitted at trial, the result of the proceeding might have been different.

Accordingly, the judgment of the coram nobis court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[2](...continued)
R. Evid. 607, Advisory Comm'n Comments.