IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 13, 2018

**MATTHEW DIXON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**Nos. 98-02267, 98-02268, 98-02270     James M. Lammey, Judge**

_____

**No. W2017-00490-CCA-R3-ECN**

_____

The pro se Petitioner, Matthew Dixon, appeals the summary dismissal of his petition for writ of habeas corpus and post-conviction DNA analysis. Following our review, we affirm the summary dismissal of the petition.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Matthew Dixon, Clifton, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; and Katherine C. Redding, Assistant Attorney General, for the appellee, State of Tennessee.


**OPINION**

**FACTS and PROCEDURAL HISTORY**

The Petitioner was convicted in a Shelby County Criminal Court of premeditated first degree murder and two counts of especially aggravated kidnapping based on his participation with a group of fellow Gangster Disciple members in administering a brutal beating to two other gang members as punishment for their alleged violations of gang rules. State v. Mickens, 123 S.W.3d 355, 361 (Tenn. Crim. App. 2003), perm. app. denied (Tenn. 2003). One of the victims, Ricky Aldridge, who received the less severe punishment of a beating without the use of weapons, survived and testified against the Petitioner at his trial. Id. at 366-67. Among other things, Mr. Aldridge related how the

Petitioner and his co-defendants held him and the murder victim, Marshall Shipp, by the backs of their pants before they began beating Mr. Shipp with bats and a tire iron. Mr. Shipp sustained severe blunt force trauma to his head with swelling and bleeding of the brain, blunt trauma to the lower legs, and a gunshot wound to the pelvis with extensive internal bleeding and died of his injuries approximately two days following the incident. Id.

Another one of the State's witnesses at trial was Robert Walker, a "chief of security" for the Memphis Gangster Disciples, who testified that he was present when Mr. Shipp's "violations" were discussed by the Memphis "overseer" of the Gangster Disciples, Tony Phillips, who gave permission for lower level gang members to kill Mr. Shipp. Id. at 363-65.

Following his conviction, the Petitioner filed a petition for post-conviction relief, which was denied by the post-conviction court after an evidentiary hearing. We affirmed the judgment of the post-conviction court, and our supreme court denied the Petitioner's application for permission to appeal. See Matthew Dixon v. State, No. W2007-01091-CCA-R3-PC, 2008 WL 2673237, at *1 (Tenn. Crim. App. July 8, 2008), perm. app. denied (Tenn. Oct. 27, 2008).

The Petitioner later filed a petition to reopen his petition for post-conviction relief, alleging as a later-arising claim his having learned that Robert Walker "had a secret deal with the prosecution for a more favorable plea agreement in exchange for his testimony against the [P]etitioner." Matthew Dixon v. State, No. W2015-00130-CCA-R3-PC, 2015 WL 6166604, at *3 (Tenn. Crim. App. Oct. 21, 2015). The post-conviction court summarily dismissed the petition, finding that it was time-barred and that the Petitioner had not stated a valid claim for tolling the statute of limitations. Id. at *3-4. The Petitioner then appealed to this court. In our summary of the facts, we noted that Mr. Walker testified at the Petitioner's trial "that there was no deal in place with the State at that time, although he did hope for consideration in charges against him in exchange for his testimony." Id. at *3. We also noted that Mr. Walker testified before a federal grand jury in 1998 "that there was no specific plea agreement in place, but he had discussed the matter with the State and hoped for consideration." Id. Ultimately, however, we dismissed the appeal for lack of jurisdiction, finding that the Petitioner had failed "to properly seek review of the post-conviction court's denial of the motion to reopen[.]" Id. at *5.

On September 14, 2016, the Petitioner filed the various pleadings at issue in this case, including one he styled as an "Amended Petition for Writ of Error Coram Nobis Relief and DNA Post Conviction Petition." The Petitioner claimed in his "Amended Petition" that he had filed an August 28, 2014 petition for post-conviction relief based on

a later-arising claim and a March 1, 2015 petition for writ of error coram nobis, but had not heard anything from the courts regarding the status of those petitions. There are no 2014 petitions for error coram nobis or for Post-Conviction DNA analysis included in the record. However, it appears that the August 28, 2014 petition for post-conviction relief based on a later-arising claim referenced by the Petitioner is the same petition that was summarily dismissed by the post-conviction court in 2015. See Matthew Dixon, 2015 WL 6166604, at *3 (noting that the petition for post-conviction relief based on a later-arising claim was filed on August 25, 2014).

In the "Amended Petition" that is the subject of this appeal, the Petitioner alleged he was entitled to error coram nobis relief based on newly discovered exculpatory evidence consisting of non-prosecution agreements between the State and Ricky Aldridge and the State and Robert Walker that were "purposely and knowingly suppressed and withheld prior to [the Petitioner's] August 1999 trial," as well as "[e]vidence of a history of violent murders involving both State star witnesses Ricky Aldridge and Robert Walker," which was also "purposefully and knowingly suppressed" by the State prior to the Petitioner's trial. He further alleged that new DNA analysis techniques, specifically, "[t]ouch DNA," could be used to exclude him as the DNA donor of "DNA profiles that may have been transferred to either the [b]elt of Ricky Aldridge or samples taken from the physical person of . . . Mr. Shipp on the night of the murders [sic]." The Petitioner asserted that such DNA analysis excluding him as the contributor of touch DNA from the belt of Mr. Aldridge or the person of Mr. Shipp could be used to impeach the testimony of the State's star witness, Mr. Aldridge.

On November 7, 2016, the State responded with a motion to dismiss on the bases that the petition for writ of error coram nobis was filed outside the one-year statute of limitations and that the Petitioner failed to allege any new evidence relating to matters actually litigated at trial. With respect to the request for DNA analysis, the State argued that the Petitioner failed to establish that a "reasonable probability exist[ed] that the [P]etitioner would not have been prosecuted or convicted if exculpatory [evidence were] obtained through DNA analysis."

On November 7, 2016, the trial court entered an order granting the State's motion to dismiss. Among other things, the court noted that there was no evidence of an actual deal or promise between the State's witnesses and the State prior to trial and that the Petitioner had failed to show how lack of his DNA on the victim would have resulted in his not being prosecuted or convicted. This court granted the Petitioner's request to late-file his notice of appeal, and the matter is now before us on appeal.

## ANALYSIS

A writ of error coram nobis is an extraordinary remedy by which the court may provide relief from a judgment under only narrow and limited circumstances. State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). Tennessee Code Annotated section 40-26-105 provides this remedy to criminal defendants:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial. The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause.

Tenn. Code Ann. § 40-26-105(b), (c) (2012).

Our supreme court has stated the standard of review as "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." State v. Vasques, 221 S.W.3d 514, 525-28 (Tenn. 2007) (citation omitted).

Coram nobis claims are subject to a one-year statute of limitations. Tenn. Code Ann. § 27-7-103. The one-year statute of limitations, may, however, be tolled on due process grounds if the petitioner seeks relief based upon newly discovered evidence of actual innocence. Wilson v. State, 367 S.W.3d 229, 234 (Tenn. 2012). The issue of whether a claim is barred by an applicable statute of limitations is a question of law, which this court reviews de novo. See id.

We conclude that the trial court properly dismissed the error coram nobis petition on the basis of the statute of limitations. The petition was filed well beyond the one-year statute of limitations, and, thus, is untimely. The Petitioner's claim that he has recently discovered evidence of alleged pretrial non prosecution agreements between the State and the State's key witnesses does not constitute "newly discovered evidence of actual innocence" that would warrant the tolling of the statute of limitations on due process grounds. Moreover, as the trial court noted, the Petitioner failed to present anything, other than his bare assertions, in support of his claim that there were any pretrial agreements between the State and its witnesses. We, therefore, affirm the summary dismissal of the petition as time-barred.

We further conclude that the trial court properly dismissed the Petitioner's Motion for Post-Conviction DNA analysis. Under the Post-Conviction DNA Analysis Act of 2001, the court shall order DNA analysis of "any evidence that is in the possession or control of the prosecution . . . . , and that is related to the investigation or prosecution that resulted in the judgment of conviction and that may contain biological evidence," Tenn. Code Ann. § 40-30-303 (2012), if the court finds:

>    (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

>    (2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

>    (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

>    (4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Id. § 40-30-304.

The post-conviction court is granted considerable discretion in its decision about whether to grant a Petitioner relief under the Post-Conviction DNA Analysis Act, and this court will not reverse its judgment unless it is unsupported by substantial evidence. See Sedley Alley v. State, No. W2004-01204-CCA-R3-PD, 2004 WL 1196095, at *3 (Tenn. Crim. App. May 26, 2004). We agree with the trial court that the evidence the Petitioner sought to have analyzed would not have prevented his prosecution or established his innocence of the offenses. Accordingly, we affirm the judgment of the trial court denying the Petitioner's request for DNA analysis.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court summarily dismissing the petition for writ of error coram nobis and post-conviction DNA analysis.

_____

ALAN E. GLENN, JUDGE